**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 26 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

ROCKWELL INTERNATIONAL
CORPORATION,

     Defendant - Appellant.

No. 96-1530

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 92-CR-107-M)**

---

Harold A. Haddon (Rachel A. Bellis with him on the brief), Haddon, Morgan &
Foreman, P.C., Denver, Colorado for the Defendant - Appellant.

Douglas N. Letter, Department of Justice, Washington, D.C. for the Plaintiff -
Appellee.

---

Before **BRISCOE**, **LOGAN** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

    In 1992, Rockwell International Corporation entered into a plea agreement

with the United States (the "government"), pleading guilty to various

environmental crimes and agreeing to pay a fine of $18.5 million. In return, the government promised to refrain from further criminal and, to a lesser extent, civil proceedings. Rockwell appeals the district court's refusal to entertain its interpretation of that plea agreement, an interpretation that would forbid the government from intervening in a qui tam action against Rockwell. We conclude that the district court was correct to reject Rockwell's proposed reading of the plea agreement, and affirm.

## I

Rockwell operated the U.S. Department of Energy's Rocky Flats Nuclear Weapons Plant just outside Denver, Colorado. In 1988, the criminal division of the Department of Justice, as well as other federal agencies, began investigating allegations that Rockwell had committed environmental crimes at Rocky Flats. After obtaining a federal warrant and conducting an extensive search of the facility in 1989, the government seized a very large volume of documents and a special grand jury was empaneled to investigate Rockwell's operation of Rocky Flats. Also in 1989, James Stone, as relator, filed a qui tam complaint against Rockwell in district court in Colorado, pursuant to 31 U.S.C. § 3730 (the "Stone Suit"). Stone's complaint alleged that Rockwell had violated the False Claims Act, 31 U.S.C. § 3729, by submitting improper reimbursement applications to the

Department of Energy and committing other wrongful acts in its operation of Rocky Flats.

In compliance with 31 U.S.C. § 3730(b), the complaint in the Stone Suit was filed under seal and served on the United States but not on Rockwell. Because the government sought and was granted extensions to keep the complaint under seal, Rockwell was not given notice of the Stone Suit until November 1990. Even after the complaint was unsealed, the United States, acting through the civil division of the Justice Department, continued to delay the decision on whether to elect to prosecute the qui tam action. In the meantime, Rockwell filed a suit against the United States in the Court of Federal Claims (the "Claims Court Suit"), alleging that the Department of Energy had breached contractual obligations and had improperly withheld fees owing to Rockwell for operating Rocky Flats. During this time, proceedings before the grand jury continued.

In 1991, the government and Rockwell's counsel entered into substantial plea negotiations, discussing the possibility of a global resolution of all suits and investigations involving Rockwell's management of Rocky Flats. The negotiations culminated in a written plea agreement executed on March 26, 1992, an agreement that fell short of the full resolution sought by Rockwell. The five-page agreement specified that Rockwell would waive the necessity of indictment, plead guilty to ten environmental criminal charges and pay a fine of $18.5

million. In return, the government promised not to bring any further environmental criminal charges against the corporation or its officers, directors or employees stemming from Rockwell's management of Rocky Flats as then known by the government. The government also promised not to sue or take other administrative action against Rockwell based on violations of certain environmental statutes. Specifically, provision 5 of the agreement states:

> In connection with this disposition, the United States agrees that, as to all environmental matters at Rocky Flats which are presently known to the Department of Justice or the Environmental Protection Agency ("EPA") on the date of this agreement, the United States covenants not to sue or take administrative action against Rockwell for civil damages, penalties or other monetary relief based upon alleged violations of RCRA, the CWA, § 103 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9603, the Clean Air Act, 42 U.S.C. §§ 7401 et seq., or the Toxic Substances Control Act, 15 U.S.C. §§ 2601 et seq.

Appellant's App. at 500.

However, provision 5 expressly excludes from the government's promise not to sue three areas of potential civil liability. Directly following the above-quoted language, the agreement states:

> This covenant does not encompass (or preclude) (a) claims for recovery of response costs, natural resource damages or injunctive relief brought pursuant to RCRA, CERCLA or other authority, or for civil or administrative penalties arising in connection with such relief or a consent decree or administrative order mandating such relief; (b) the ongoing civil or administrative investigation of possible violations of 40 C.F.R. Part 761 concerning polychlorinated biphenyls ("PCBs") at Rocky Flats, including, without limitation,

-4-

Building 707; or (c) the issues raised in <u>United States of America, ex rel., and James S. Stone v. Rockwell International Corporation</u>, Civil Action No. 89-C-1154 (D. Colo.) ("<u>Stone</u>"). After an independent review, the Department of Justice-Civil Division has determined to file a notice in <u>Stone</u> declining to intervene.

<u>Id.</u> at 500-01. The agreement contains an integration clause stating there are no other agreements, terms, or conditions, express or implied, and that entering the agreement, neither parties relies on any terms, promises, or conditions not expressed therein. <u>Id.</u> at 503. The plea agreement was accepted by the court in June 1992.

The same day Rockwell executed the plea agreement, the Department of Justice-Civil Division filed in the Stone Suit a notice of its election not to intervene in the qui tam action. The notice states: "The United States also reserves its rights under 31 U.S.C. § 3730(c)(3) to intervene at a later date upon a showing of good cause." <u>Id.</u> at 505.

In November 1995, citing information revealed in pending civil litigation with Rockwell, the government moved to amend its answer to Rockwell's complaint in the Claims Court Suit to interpose a fraud defense/counterclaim. In July 1996, the Court of Federal Claims allowed the government to file the amended answer. Also in November 1995, the government moved to intervene in the Stone Suit. Rockwell responded with this action. The company asserted that

-5-

the attempt to intervene breached the 1992 plea bargain and requested the district court to enforce that agreement.

In separate orders, the district court denied Rockwell's motion to enforce the plea agreement and granted the government's motion to intervene in the Stone Suit. The court found the terms of the plea agreement clear with respect to the government's limitation on its promise not to pursue civil actions, and found no ambiguity in what it characterized as the "statement of fact" that the Department of Justice-Civil Division had previously determined to file a statement in the Stone Suit declining to intervene. Id. at 189. The court rejected Rockwell's attempt to introduce a large volume of material describing the history of the plea agreement negotiations. According to Rockwell, this evidence demonstrates that it understood the government's obligation to include a promise not to intervene at a later date unless new and significant information on the complexity or magnitude of the fraud was revealed. The court concluded that

> Rockwell cannot credibly argue that it did not understand the government's consideration for its guilty pleas to encompass only a promise not to pursue civil or administrative remedies for violations of the RCRA, the CWA, § 103 of the CERCLA, the Clean Air Act, and the Toxic Substances Control Act. The plea agreement did not contain a covenant not to pursue civil remedies for any violation of the False Claims Act, and it expressly excluded any covenant with respect to the Stone case.

Id. at 192. It is in this posture the case comes before us.

## II

-6-

On appeal, Rockwell raises two issues, both related to the district court's interpretation of the plea agreement. The first is that the district court improperly refused to consider Rockwell's interpretation of the plea agreement and enforce it according to those terms. The second is that the district court impermissibly refused to grant an evidentiary hearing to consider the evidence supporting Rockwell's interpretation of the agreement.

According to Rockwell, the language of the plea agreement reflects negotiations with the government in which it attempted to ensure no financial liability apart from the $18.5 million fine it agreed to pay as part of its guilty pleas. Rockwell tells us that in order to effectuate this goal, it attempted to get the United States Attorney for the District of Colorado and the Criminal Division of the Justice Department to commit the Justice Department-Civil Division to stay out of the Stone Suit. Rockwell alleges that Justice Department attorneys consistently indicated that the government did not intend to intervene in the Stone Suit, but that the Civil Division attorneys were unwilling to commit that assurance to writing. Recognizing its leverage, Rockwell alleges the government extracted $3 million more in fines than Rockwell had previously agreed to pay in return for declining to intervene. Rockwell suggests an understanding that the government might only later intervene if it obtained significant new information increasing the scope and complexity of the fraud. Allegedly in order to forestall future

intervention based on the discovery of new information, Rockwell turned over additional incriminating documents before the plea agreement was executed.

Much of the evidence offered by Rockwell to support its reading of the agreement explains why it believed that the declination of intervention included a limit on future intervention. If the government initially declines to take over the qui tam suit, then, as noted in the government's declination of intervention, § 3730 only allows the government later to intervene upon a showing of "good cause." 31 U.S.C. § 3730(c)(3). The proposed evidence includes correspondence between the government and Rockwell's attorneys, transcripts of testimony by Department of Justice prosecutors, and legislative history of the qui tam provisions of the FCA, confirming Rockwell's reasonable understanding that the definition of "good cause" seriously circumscribed the government's ability to later intervene. Rockwell admits that all this evidence is extrinsic to the plea agreement itself, but insists it is nevertheless admissible and necessary to explain Rockwell's understanding of the plea agreement.

Due process requires "that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971); see also Mabry v. Johnson, 467 U.S. 504, 508-11 (1984) (noting consensual elements of knowing and intelligent plea require

-8-

defendant to have a fair understanding of plea bargain's consequences). Rules of contract law inform the interpretation and enforcement of promises in a plea agreement. United States v. Cooper, 70 F.3d 563, 565 (10th Cir. 1995); see also Blackledge v. Allison, 431 U.S. 63, 75 n.6 (1977). If we find that the government breached the plea agreement we must remand the case either for specific performance or to allow the defendant to withdraw its guilty plea. Santobello, 404 U.S. at 262-63.

We review de novo whether the government's conduct violates the plea agreement, but the district court's interpretation of the agreement is reviewed for clear error. Allen v. Hadden, 57 F.3d 1529, 1534 (10th Cir. 1995). The district court's decision to deny an evidentiary hearing is reviewed for an abuse of discretion. United States v. Packwood, 848 F.2d 1009, 1010 (9th Cir. 1988). A court applies a two-step process in interpreting the terms of a plea bargain: first, the court examines the nature of the government's promise; second, the court investigates this promise based upon the defendant's reasonable understanding at the time the guilty plea was entered. Cunningham v. Diesslin, 92 F.3d 1054, 1059 (10th Cir. 1996). We "will not allow the government to resort to a rigidly literal construction of the language of the plea agreement" to frustrate a defendant's reasonable expectations. United States v. Shorteeth, 887 F.2d 253, 256 (10th Cir. 1989). However, the government's obligations to the defendant do not issue from

mere silence.  United States v. Furman, 112 F.3d 435, 439 (10th Cir. 1997) ("We shall not impose duties on the government that are not an express or implied part of its agreement with the defendant.").

Here, the district court found that the plea agreement expressly excluded any covenant not to sue with respect to the Stone Suit.  Appellant's App. at 189.  Under Cunningham, we therefore examine the scope of the government's promise in light of Rockwell's reasonable understanding at the time it entered its guilty plea.  In this case, however, the second-step reasonableness inquiry is severely limited by the integration clause contained in the plea agreement.  See Blackledge, 431 U.S. at 75 n.6.  The parol evidence rule bars the court from considering evidence of terms outside of an integrated written agreement.

The parol evidence rule is as much one of substantive contract law as it is an evidentiary rule.  See generally Arthur L. Corbin, 3 Corbin on Contracts § 573 (1960).  Under it, extrinsic evidence may not be admitted to contradict the terms of a binding integrated agreement or to add to the terms of a binding and completely integrated agreement.  Restatement (Second) of Contracts §§ 215, 216.  An "integrated agreement" exists when the parties to a contract have reduced to a final written expression one or more terms of their agreement.  Id. § 209(1). "A completely integrated agreement is an integrated agreement adopted by the parties as a complete and exclusive statement of the terms of the agreement."  Id. §

210(1). Merely because a writing claims to be a final and exclusive expression of the parties' agreement does not in itself prohibit the court from looking beyond the document to see if other agreements exist between the parties. See id. § 209 comment b; Blackledge, 431 U.S. at 75 n.6.

The written plea agreement in this case appears on its face to be completely integrated. Provision 12 provides: "This document states the parties' entire agreement. There are no other agreements, terms, or conditions, express or implied. In entering this agreement, neither the Department of Justice nor Rockwell have relied, or are relying, on any terms, promises, or conditions not expressly stated herein." Appellant's App. at 503. Rockwell does not contend that the written agreement is not the parties' final and complete expression; in fact, in the district court Rockwell itself asserted the integration of the plea agreement to bar consideration of the Department of Justice-Civil Division's notice of declination in the Stone Suit. See Appellant's App. 78-79; 130-31 (statement of Mr. Koenigs); see also Restatement (Second) of Contracts § 209(3) (in absence of contrary evidence, a writing that appears integrated will be considered as such); Blackledge, 431 U.S. at 75 n.6 (provision denying existence of other agreements or terms carries great weight). Thus, if Rockwell's extrinsic evidence is offered to prove its reasonable understanding that the plea agreement

contained an additional term, the parol evidence rule will bar our consideration of that understanding. Rockwell offers its evidence for exactly this purpose.

The plea agreement in this case contains no promise by the government limiting its ability to intervene in the Stone Suit to a showing of good cause. Not only is the term "good cause" absent from the written plea agreement, the only covenant by the government not to sue appears in provision 5, and that provision specifically excludes the Stone Suit from the covenant not to sue. The language relied upon by Rockwell to support its view of the government's obligations is the statement: "After an independent review, the Department of Justice-Civil Division has determined to file a notice in <u>Stone</u> declining to intervene." Appellant's App. 500-01. The district court considered the quoted sentence and found it to be not a promise, but a statement of fact. <u>Id.</u> at 189. Such an interpretation of the agreement is not clearly erroneous.

What Rockwell really seeks is to add a term to the agreement. According to Rockwell, the plea agreement precludes the government from suing for damages based on violations of environmental law other than (<u>inter</u> <u>alia</u>) the issues in the Stone Suit, <u>except</u> that the government can only sue in the Stone Suit upon satisfying Rockwell's understanding of the statutory phrase "good cause." This, however, is not how the plea agreement is written. Regardless of whether Rockwell's extrinsic evidence vindicates its assertion that the government agreed

-12-

to be so limited in intervening in the Stone Suit, the parol evidence rule forbids Rockwell from asserting this additional term.  See Restatement (Second) of Contracts § 216; see also United States v. Ajugwo, 82 F.3d 925, 928-29 (9th Cir. 1996) (excluding evidence of additional term where plea agreement found to be completely integrated);  United States v. Fentress, 792 F.2d 461, 464 (4th Cir. 1986) (same).  Cases cited by Rockwell to demonstrate a relaxed application of the parol evidence rule in the plea bargain context all involve admission of extrinsic evidence to explain the terms of the agreement itself.  See Swinehart, 614 F.2d at 858; Kingsley v. United States, 968 F.2d 109, 114-15 (1st Cir. 1992).

United States v. Garcia, 956 F.2d 41, 42-44 (4th Cir. 1992), also cited by Rockwell, involved admitting parol evidence to prove that an additional term existed, notwithstanding the apparently unambiguous nature of the written plea agreement itself.  In that case, however, it was clear that there was no dispute as to the government's contemporaneous additional promise and no evidence that the additional agreement was extinguished by an integration clause.  In fact, the additional promise, contained in the plea agreement's cover letter, indicated that the term was included in the plea agreement itself.  That case was closer to a demonstration that the government may not in bad faith make a promise to a defendant who speaks almost no English, then repudiate it merely because of the existence of a written agreement mistakenly omitting the promise.  See, e.g.,

-13-

Blackledge, 431 U.S. at 75 n.6 (mistake or fraud can vitiate even writing purporting to be completely integrated). Rockwell does not argue that the integration clause incorrectly manifests its understanding of the scope of the written agreement. The district court was correct to conclude that the government's efforts to intervene in the Stone Suit were not breaches of the plea agreement. In light of the agreement's complete integration into the writing, any understanding to the contrary is simply unreasonable.

Even if Rockwell's interpretation of "good cause" in the qui tam statute is reasonable, it is not a reasonable understanding of the government's promise in the plea agreement. The qui tam statute is not referenced in the plea agreement, which expressly excludes the Stone Suit from its covenants. At most, Rockwell's evidence suggests that it was under the impression that a declination of intervention would severely preclude the government from later intervening and that the government did nothing to dissuade Rockwell from such an understanding. This belief exists apart from the plea agreement, however, is based on the statute, and is an issue to be resolved in the Stone Suit.

For similar reasons, we do not believe the district court abused its discretion in ruling on Rockwell's motion without granting an evidentiary hearing. We will not disturb a district court's discretionary decision unless we have a firm and definite convictions that it made a clear error of judgment or went

-14-

beyond the boundaries of permissible choice. Moothart v. Bell, 21 F.3d 1499, 1504 (10th Cir. 1994). Rockwell claims that the district court refusal to grant an evidentiary hearing is a manifestation of the court's conclusion that as a corporation, it is not entitled to the due process protections afforded individual defendants. To support its position, Rockwell seizes on language from the district court's order:

> The defendant [Rockwell] cites cases that require interpretation of criminal plea agreements according to the reasonable understanding of the defendant. In those cases, the courts were concerned with due process protection of the accused and it is not uncommon for the individual offender to have an imperfect understanding of the legal issues or to have his understanding be something different from that of his attorney. That is, of course, not possible where the defendant is a corporation. Rockwell cannot credibly argue that it did not understand the government's consideration for its guilty pleas to encompass only a promise not to pursue civil or administrative remedies for violations of [various environmental statutes]. The plea agreement did not contain a covenant not to pursue civil remedies for any violation of the False Claims Act, and it expressly excluded any covenant with respect to the Stone case.

Appellant's App. at 192.

Rockwell is correct that a corporate defendant is entitled to the protections of the Due Process Clause. See, e.g., BMW of North America, Inc. v. Gore, 116 S. Ct. 1589 (1996). We do not read the quoted language from the district court to mean it did not consider Rockwell entitled to due process. Rather, we understand the court to have found that Rockwell had the same understanding of the plea agreement that its counsel had. Rockwell does not claim that its attorneys misled

-15-

it in explaining the plea agreement's consequences. Rockwell's attorneys simply could not have understood the plea agreement to include a term not within the completely integrated written instrument, and the district court merely held the corporation to that same understanding. Because the evidence proffered by Rockwell could not reasonably have led it to the understanding of the agreement it now asserts, the court did not abuse its discretion in denying Rockwell an evidentiary hearing.

### III

For the reasons stated herein, the district court's denial of Rockwell's motion to enforce the plea agreement is **AFFIRMED**.