**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 14 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

      Plaintiff-Appellee,

v.

CENTENNIAL LIFE INSURANCE
COMPANY,

      Defendant-Appellant.

Nos. 96-3253, 96-3301, &
96-3332
(D.C. No. 95-2331-KHV)
(D. Kansas)

**ORDER AND JUDGMENT[1]**

Before **HENRY**, **LUCERO**, Circuit Judges, and **MILES-LaGRANGE**, District Judge[2]

I.     <u>INTRODUCTION</u>

This is a dispute between two insurance carriers, Life Insurance Company of North

America ("LINA") and Centennial Life Insurance Company ("Centennial"), concerning

---

[1]      This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[2]      The Honorable Vicki Miles-LaGrange, United States District Judge of the Western District of Oklahoma, sitting by designation.

whether Centennial's long term disability policy with Lockheed Corporation and its affiliated companies ("Lockheed") covered the long term disability claims of two Lockheed employees, Daniel Cryer and Rita Yotter. In a written order entered June 28, 1996, the district court concluded Centennial's policy did cover the claims. The district court granted LINA's motion for summary judgment and denied Centennial's cross-motion for summary judgment.[3] Centennial filed a notice of appeal -- number 96-3253.

II.    JURISDICTION

Because the district court's June 28, 1996 order did not specify the amount of damages awarded to LINA, this Court, on August 16, 1996, directed the parties to address whether the appeal should be dismissed for lack of jurisdiction. The issue was whether the June 28, 1996 order was a final order. After receiving the parties' responses, we entered an order on February 10, 1997, advising the parties that we would reserve judgment on the jurisdictional issue and would submit the issue to the panel selected to handle this appeal.

A review of the record reveals that the amount of damages requested by LINA was never in dispute and was readily ascertainable. See Albright v. UNUM Life Ins. Co. of America, 59 F.3d 1089, 1093 (10th Cir. 1995). In its complaint, LINA sought recovery in the amount of $19,976.90 as to claimant Cryer and $16,400.00 as to claimant Yotter, for a

---

[3]    LINA had paid the claims, reserving its right to seek reimbursement from Centennial. The district court concluded that LINA was entitled to reimbursement, but did not specify the amount to be reimbursed.

total of $36,376.90. Thus, the omission of the specific dollar amount in the district court's June 28, 1996 order may be viewed as a clerical error that did not affect finality. See Pratt v. Petroleum Prod. Mgmt. Inc. Employee Sav. Plan & Trust, 920 F.2d 651, 655-56 (10th Cir. 1990) ("[m]erely because the judgment is in need of clerical correction does not give us license to disregard it"). Accordingly, we have jurisdiction over appeal number 96-3253.

III.     SUBSEQUENT ORDERS ENTERED BY THE DISTRICT COURT

On September 5, 1996, the district court entered an order awarding LINA its attorneys' fees. Centennial filed a second notice of appeal -- number 96-3301. On September 24, 1996, the district court entered a judgment nunc pro tunc which specifically stated the amount of damages awarded to LINA. Centennial then filed a third notice of appeal -- number 96-3332. The appeals have been consolidated.

IV.     DISCUSSION

There are three issues on appeal: (1) whether Centennial's policy covers Cryer's and Yotter's claims (the "coverage issue"), (2) if Centennial's policy covers the claims, whether the payment of the claims should be pro-rated between Centennial and LINA (the "pro-rating issue") and (3) whether LINA is entitled to an award of its attorneys' fees (the "attorneys' fees issue").

A.     The Coverage Issue

We review a grant of summary judgment de novo, applying the same legal standard applied by the district court.  Taken v. Oklahoma Corporation Commission, 125 F.3d 1366, 1368 (10th Cir. 1997).

This case is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").  We review de novo a denial of benefits under an ERISA plan "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

> If a benefit plan does give an administrator discretionary authority to construe doubtful provisions of the plan itself, the administrator's decision must be upheld unless it was arbitrary and capricious, not supported by substantial evidence or erroneous on a question of law.  If an administrator or fiduciary empowered to interpret the plan is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.

Thorpe v. Retirement Plan of the Pillsbury Co., 80 F.3d 439, 443 (10th Cir. 1996).[4]  "In interpreting the terms of an ERISA plan, we examine the plan documents as a whole and, if unambiguous, we construe them as a matter of law."  Chiles v. Ceridian Corp., 95 F.3d 1505, 1511 (10th Cir. 1996).  We give the words their common and ordinary meaning, as

---

[4]     In this case, as in Thorpe, we need not determine whether to apply the de novo or arbitrary and capricious standard, because we conclude that Centennial's denial of Cryer's and Yotter's claims was arbitrary and capricious and therefore fails even under the most deferential standard.

a reasonable person in the position of the plan participant (not the actual participant) would have understood them.  Id.  "Questions involving the scope of benefits provided by a plan to its participants must be answered initially by the plan documents, applying the principles of contract law."  Id. at 1515.

The material facts are not genuinely disputed.  Lockheed funds a disability benefit plan for its employees (the "Plan").  From March 4, 1977 through June 30, 1991, the Plan benefits were provided through insurance Lockheed purchased from Centennial. Effective July 1, 1991, Lockheed terminated its contractual relationship with Centennial and contracted with LINA to provide insurance for the Plan.

Centennial's policy contained a Termination Date of Insurance clause which, in essence, provided that the Lockheed employees' insurance coverage would end on the date the policy was terminated.[5]  The clause, however, also contained an Extension of Benefits clause which provided, in essence, that any employee who was receiving long term disability benefits on the date the policy was terminated would continue to receive such benefits as long as he or she remained totally disabled.[6]  Finally, the policy also

---

[5]    The "Termination Date of Insurance clause provides:
> The insurance of an Insured Person [Cryer and Yotter] shall terminate on the earliest of the following times:
> (a)    the date this policy is terminated;

Appellant's Appendix at 0148 (hereinafter, "Aplt. App. at ___").

[6]    The Extension of Benefits clause, which is part of the Termination Date of Insurance clause, provides:

(continued...)

-5-

contained a Recurrent Disability clause which, in essence, provided that if an employee

who was receiving long term disability benefits returned to work, but became totally

disabled again for the same or related reason within six months of returning to work, the

successive period of disability would relate back to the first period of disability and would

be considered one period of disability for that employee.[7]

Cryer and Yotter initially became disabled prior to July 1, 1991, and Centennial

made long term disability payments to them after the expiration of their respective 180-

_____

[6](...continued)
> In the event an Insured Person is totally disabled the
> date this policy is discontinued, the benefits provided
> by this Policy to such totally disabled Insured Person
> shall be extended during the continuance of such total
> disability. The extension of benefits hereby provided
> shall be subject to all the terms and conditions of the
> policy, as if the discontinuance had not occurred.

Aplt. App. at 0149.

[7]    The Recurrent Disability clause provides:
> "Period of total disability" means the period of time
> during which the Insured Person is totally disabled,
> whether from one or more causes, beginning on the
> first day of total disability and ending on the date the
> Insured Person ceases to be totally disabled, and
> returns to active work, except that
> >  *    *    *
> (2)    After the expiration of the elimination
> period, successive periods of total disability due
> to the same or related causes shall be considered
> one Period of Total Disability if separated by
> less than six months of active employment.

Aplt. App. at 0145-46.

day elimination periods.[8]  Both Cryer and Yotter returned to full-time active employment with Lockheed after July 1, 1991, and Centennial stopped paying long term disability benefits to them.  Both employees later became disabled again for the same or related reason within six months of their respective returns to work.[9]  Centennial refused to resume payment of Cryer's and Yotter's long term disability benefits.  LINA paid the claims, reserving its right to seek reimbursement from Centennial.

Centennial contends that since its policy with Lockheed terminated June 30, 1991, its policy was not in effect when Cryer and Yotter had their second periods of disability, on October 29, 1991 and March 30, 1992, respectively, and therefore Centennial's policy did not cover Cryer's and Yotter's second periods of disability.  LINA, on the other hand, contends that under Centennial's policy, Cryer's and Yotter's second periods of disability

---

[8]  Centennial's policy required a 180-day elimination period before commencement of benefits for long term disabilities.

[9]  Cryer had chronic fatigue syndrome.  He was off work from January 22, 1991 through September 16, 1991.  Centennial paid long term disability benefits to him through September 16, 1991.  Cryer returned to work September 19, 1991, and remained at work until October 29, 1991, when he became disabled again for the same or related reason.

Yotter injured her back on May 10, 1990 and was off work from May 10, 1990 through February 13, 1992.  Centennial paid long term disability benefits to her through February 13, 1992.  She returned to work February 14, 1992, and remained at work until March 30, 1992 when she became disabled again for the same or related reason.

Centennial stipulated to the fact that Cryer's and Yotter's disabilities were recurrent disabilities under Centennial's Recurrent Disability clause, while preserving its legal argument that the termination of Centennial's policy on June 30, 1991 cut off Cryer's and Yotter's claims.  This factual stipulation is found in Centennial and LINA's Second Joint Stipulation.  Centennial and LINA stipulated that "the disabilities of Cryer and Yotter are recurrent disabilities under the Centennial policy".  Aplt. App. at 0739.

were treated as if each employee had only had one period of disability, since the second period of disability for each employee occurred within six months of his or her return to active employment.

We agree with LINA and with the conclusion reached by the district court. The language of the pertinent policy provisions is plain and unambiguous.[10] Under the plain and unambiguous language of Centennial's recurrent disability provision, Cryer's and Yotter's second periods of disability are considered to relate back to their respective initial periods of disability and are considered to be one period of disability for each employee.[11] Since Centennial's policy covered Cryer's and Yotter's initial periods of disability, and since Cryer's and Yotter's second periods of disability relate back to their respective initial periods of disability, Centennial's policy continues to cover Cryer's and Yotter's claims.

---

[10]     Centennial invites us to consider evidence of the negotiations that took place in 1991 between Lockheed and LINA to assist in our construction of Centennial's 1977 insurance contract with Lockheed. We decline the invitation to consider such parol evidence. "The parol evidence rule bars the court from considering evidence of terms outside of an integrated written agreement." United States v. Rockwell Int'l Corp., 124 F.3d 1194, 1199, (10th Cir. 1997). "[It] is as much [a rule] of substantive contract law as it is an evidentiary rule." Id. (citing Arthur L. Corbin, 3 Corbin on Contracts § 573 (1960)). "Under [the parol evidence rule], extrinsic evidence may not be admitted to contradict the terms of a binding integrated agreement or to add to the terms of a binding and completely integrated agreement." Id. (citing Restatement (Second) of Contracts §§ 215, 216).

[11]     We also agree with LINA's argument, and with the district court's conclusion, that the Recurrent Disability clause is expressly incorporated into the Termination Date of Insurance clause, in that the Termination Date of Insurance clause expressly states that it "shall be subject to all the terms and conditions of the policy, as if the discontinuance [of the policy] had not occurred." Aplt. App. at 0149 (emphasis added).

B.     The Pro-rating Issue

Centennial contends that if it is determined that its policy covers Cryer's and Yotter's claims, then the actual payment of those claims should be pro-rated between itself and LINA under Centennial's Reductions and Limitations clause.[12]  The district court ruled that the pro-rating issue was "not fairly within the scope of the issues in the Pretrial Order."  Aplt. App. at 0768.  The district court then went on to say that "Centennial's argument also fails on the merits to defeat LINA's motion for summary judgment."  Aplt. App. at 0769.

1.     Scope of the Pretrial Order

"[A] district court has discretion to exclude from trial issues and claims not set forth in the pretrial order."  Rios v. Bigler, 67 F.3d 1543, 1549 (10th Cir. 1995).  Thus, we review the district court's decision for abuse of discretion.  Id.

A review of the pretrial order filed June 19, 1996 reveals that pro-rating as such is not mentioned anywhere in the pretrial order.  Moreover, the Reductions and Limitations

---

[12]     Centennial's Reductions and Limitations clause provides:
> The Benefit Amount applicable to a Total Disability covered by this Policy for any period of benefit shall be reduced by any amounts, individually or collectively, the Insured Person receives or would receive upon application (regardless of whether application is made) from the following sources:
> (a)     Paid or payable under any Policyholder sponsored disability plan; . . .

Aplt. App. at 0146.

-9-

clause is not mentioned in any way in either the Issues of Fact or the Issues of Law. The only reference to the Reductions and Limitations clause is found within Centennial's own Factual Contentions and Legal Theories. In that portion of the pretrial order, Centennial wrote:

> The defendant's policy also contains a provision as to "reductions and limitations" that benefits payable under the defendant's policy shall be reduced by any amount payable under another plan, such as the plaintiff's plan. Therefore, defendant's liability is reduced by all sums paid by LINA.

Aplt. App. at 0744.

Centennial contends this reference is sufficient to preserve the pro-rating issue for trial. However, the district court found that Centennial's reference to the Reductions and Limitations clause within its Factual Contentions and Legal Theories, and without any reference to pro-rating, was insufficient to preserve the pro-rating issue. Even if some other district court at some other time may have found Centennial's reference sufficient to preserve the issue, we cannot say the district court abused its discretion in excluding it.

2.     The Merits of the Pro-Rating Issue

Because we find the district court did not abuse its discretion in excluding the pro-rating issue, we decline to address the merits of whether, under Centennial's Reductions and Limitations clause, the benefits payable by Centennial should be pro-rated between Centennial and LINA.

C.     The Award of Attorneys' Fees

A district court should consider the following factors in determining whether to award attorney's fees pursuant to 29 U.S.C. § 1132(g)(1):  first, the degree of the offending party's culpability or bad faith; second, the degree of the ability of the offending party to satisfy an award of attorney fees; third, whether or not an award of attorneys' fees against the offending party would deter other persons acting under similar circumstances; fourth, the amount of benefit conferred on members of the plan as a whole; and fifth, the relative merits of the party's position.  Pratt v. Petroleum Prod. Mgmt. Inc. Employee Sav. Plan & Trust, 920 F.2d 651, 664 (10th Cir. 1990).  The factors are non-exclusive, Thorpe v. Retirement Plan of the Pillsbury Co., 80 F.3d 439, 445 (10th Cir. 1996), and they "are intended to guide the court's exercise of its discretion but none is necessarily decisive; various permutations and combinations can support an award of attorney fees."  Credit Managers Ass'n. of Southern Cal. v. Kennesaw Life & Accident Ins. Co., 25 F.3d 743, 749 (9th Cir. 1994) (internal citations omitted).  The decision whether to award fees pursuant to 29 U.S.C. § 1132(g)(1) is reviewed for abuse of discretion.  Pratt, 920 F.2d at 658.

The district court awarded LINA its attorneys' fees, finding that Centennial's position in denying Cryer's and Yotter's claims could not reasonably be defended in light of the express and clear language of Centennial's policy; that Centennial could not reasonably have believed that subsequent negotiations and dealings, in 1991, between

-11-

LINA and Lockheed relieved Centennial of its obligations under its unambiguous 1977 contract with Lockheed; that Centennial's denial of Cryer's and Yotter's claims was in bad faith; that Centennial is financially able to satisfy an award of fees; that an award of fees will deter others from "arbitrarily eschewing their contractual obligations to their insureds;" that the determination in this case benefits "Cryer, Yotter and potentially other Lockheed employees who still receive benefits under Centennial's long term disability policy;" that the absence of merit of Centennial's position, relative to LINA's position, "is clear;" and that the fees incurred by LINA were reasonably and necessarily incurred. Aplt. App. at 1042-44.

> Centennial contends the district court abused its discretion when it said:
>
> Because the stated reasons for denial of coverage are inconsistent with any claim of good faith and fair dealing toward the insureds, the Court can only conclude that Centennial was embittered about losing a major book of business to LINA and saw an opportunity to 'stick it' to LINA on the Cryer and Yotter claims.

Aplt. App. at 1043. Centennial also contends the district court abused its discretion when it found that the decision in this case will benefit Cryer and Yotter. Centennial points out that Cryer and Yotter have already been paid by LINA and the district court's decision does not benefit those employees in any way. Centennial also suggests there is nothing in the record to support the district court's finding that its decision will benefit any other Lockheed employees. According to Centennial, the only one that has benefitted, or will benefit, from the district court's decision is LINA.

-12-

Even if the district court's references to Centennial's "sticking it" to LINA, and its references to its decision being of benefit to Cryer, Yotter and other Lockheed employees, were unsupported by the record, which we need not decide, we find the district court's other considerations are sufficient to support the award of fees to LINA. Thorpe, 80 F.3d at 445 (10th Cir. 1996); Pratt, 920 F.2d at 664 (10th Cir. 1990). The district court did not abuse its discretion in awarding LINA its attorneys' fees under section 1132(g)(1).

V. CONCLUSION

The judgment of the district court (consolidated appeal numbers 96-3253, 96-3301 and 96-3332) is affirmed in all respects.

ENTERED FOR THE COURT

Vicki Miles-LaGrange
District Judge