HOLMES, Circuit Judge,
concurring.
I agree with the majority that the district court did not clearly err in finding Mr. Altamirano-Quintero ineligible for safety valve relief. More specifically, I agree with the majority’s reasoning in Sections 11(A) and 11(C) and concur in the judgment. I am, however, troubled by Section 11(B) of the majority opinion. There, the majority addresses whether Mr. Altamirano-Quintero could reasonably have understood, from the Plea Agreement’s express terms, that the government conceded that he had “already complied with § 3553(f)(5)’s requirement that he truthfully disclose all the information he had regarding his offense.” Maj. Op. at 1093. I respectfully disagree with the majority’s reasoning in Section 11(B) and, therefore, cannot fully join its opinion.
In particular, I write separately for two reasons. First, to properly resolve this case, I find it unnecessary to reach the issue addressed in Section 11(B). Second, the majority’s tortuous efforts to overcome Mr. Altamirano-Quintero’s reasonable arguments in favor of a government concession are not only unpersuasive, but also impose an unacceptable cost. Specifically, they run counter to, and undermine, our settled precedent concerning the interpretation of both the Sentencing Guidelines and plea agreements. Regarding the latter, the majority repeatedly employs a rigid, formalistic approach and declines to construe any ambiguities in the instant Plea Agreement against the drafter — the government.[1]
The safety valve provision (18 U.S.C. § 3553(f)) expressly requires a district court to independently determine whether a defendant has satisfied the conditions for granting safety valve relief, after affording *1100 the government “the opportunity to make a recommendation.” E.g., United States v. Gambino, 106 F.3d 1105, 1110 (2d Cir.1997) (“The plain language of the statute required the district court to make its own determination whether [the defendant] satisfied the safety valve provision, in light of the entire record including the government’s recommendation.”). Therefore, even if the government conceded that Mr. Altamirano-Quintero had satisfied the safety valve disclosure requirement, that concession would not compel the conclusion that Mr. Altamirano-Quintero had done so.
The district court was free to disregard the government’s concession in favor of other evidence bearing on the subject. And, as the majority cogently demonstrates in Section 11(C), the district court understood its independent role and did not clearly err in finding on the record that Mr. Altamirano-Quintero failed to satisfy the safety valve disclosure provision. Accordingly, as an initial matter, I find the majority’s discussion in Section 11(B) to be completely unnecessary to properly resolve this case. Even assuming arguendo the government’s concession, I would reach the same conclusion regarding the unavailability of safety valve relief.
In addition, although I need not definitively opine on whether the government conceded through its relevant conduct stipulation that Mr.- Altamirano-Quintero satisfied the safety valve’s disclosure requirement,[2] a strong argument can be made that the government did so — more specifically, that Mr. Altamirano-Quintero reasonably could have understood the government to have made such a concession in the Plea Agreement. The majority’s analysis to the contrary is unpersuasive and legally flawed. It fails to consistently adhere to the Guideline-defined meaning of “relevant conduct” and subjects the Plea Agreement to an impermissibly strained interpretation.
First, the majority observes that the government’s relevant conduct stipulation “directly coneern[ed] the ‘relevant’ conduct on which the sentencing guidelines calculate an advisory sentencing range” and did nothing more than “set[] the parameters for the criminal activity” about which Mr. Altamirano-Quintero was later required to provide information if he hoped to obtain safety valve relief. Maj. Op. at 1095, 1096. Accordingly, the majority reasons that Mr. Altamirano-Quintero could not have reasonably understood the government to have conceded that he had already provided the requisite information. Id. at 1096. This analysis rests on the faulty assumption that the term “relevant conduct” means something different when calculating an advisory Guideline sentence than it does when determining whether a defendant is entitled to safety valve relief. The plain language of the Guidelines undercuts the majority’s tacit assumption, and, therefore, weakens its rationale.
“Relevant conduct” is a term of art in criminal sentencing. As the majority recognizes, “relevant conduct” embraces the “Factors that Determine the Guideline Range.” U.S.S.G. § lB1.3(a)(l)(B). Ac *1101 cordingly, “relevant conduct” informs the district court’s determinations of “(i) the base offense level ..., (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three,_” Id. The majority further acknowledges that to satisfy the safety valve’s disclosure provision, a defendant must provide the government with complete information concerning the “offense of conviction and all relevant conduct ” as defined by U.S.S.G. § lB1.3(a)(l)(B). United States v. Stephenson, 452 F.3d 1173, 1180 (10th Cir.2006) (internal quotation marks omitted and emphasis added) (quoting U.S.S.G. § 5C1.2, cmt. n. 3 (2003)); see also United States v. Acosta-Olivas, 71 F.3d 375, 378 (10th Cir.1995). Notwithstanding its recognition that “relevant conduct” is applicable in both formulating an advisory sentencing range and ascertaining the availability of safety valve relief, the majority nonetheless fails to accord the term “relevant conduct” the same meaning in both contexts.
“We interpret the Sentencing Guidelines according to accepted rules of statutory construction.” United States v. Reaves, 253 F.3d 1201, 1203 (10th Cir.2001). “In interpreting a guideline, we look at the language of the guideline itself, as well as at the ‘interpretive and explanatory commentary to the guideline’ provided by the Sentencing Commission.” United States v. Robertson, 350 F.3d 1109, 1112 (10th Cir.2003) (quoting United States v. Frazier, 53 F.3d 1105, 1112 (10th Cir.1995)). The term “relevant conduct” is expressly defined by the Guidelines. Therefore, we typically apply the same meaning to the term each time it appears in the statute. Sierra Club v. Seaboard Farms Inc., 387 F.3d 1167, 1175 (10th Cir.2004) (when a technical term is used in a statute, “it is presumed ... that the term [has] the same meaning in each of the sections or subsections”); see also United States v. Perez, 366 F.3d 1178, 1182 (11th Cir.2004) (“Where the same language appears in two guidelines, it is generally presumed that the language bears the same meaning in both.”). Cf. Watson v. United States, — U.S. -, 128 S.Ct. 579, 583-85, 169 L.Ed.2d 472 (2007) (rejecting a uniform application of the term “use,” which was undefined by the statute and not a term of art).
Because “relevant conduct” means the same throughout the Guidelines, the majority’s attempt to limit the scope of the government’s chosen language solely to the calculation of the advisory sentencing range is unpersuasive. “Relevant conduct” means the same for calculation of the advisory sentencing range as it does for application of the safety valve. Consequently, we could reasonably construe the government’s express acknowledgment that Mr. Altamirano-Quintero disclosed all “relevant conduct” for one Guidelines purpose as an acknowledgment that he disclosed it for all Guidelines purposes.
In addition, I question the majority’s reading of the Plea Agreement itself. The majority concludes for two principal reasons that Mr. Altamirano-Quintero could not reasonably interpret the Plea Agreement as stipulating that he had already provided the government with all of the information necessary to obtain safety valve relief: first, because the Plea Agreement refers only fleetingly to 18 U.S.C. § 3553(f);[3] and second, because it contem *1102 plates that the court would consider additional information at sentencing. I am not convinced by either argument.
Relying on United States v. Reyes Pena, 216 F.3d 1204, 1212 (10th Cir.2000), United States v. Rockwell Int’l Corp., 124 F.3d 1194, 1199 (10th Cir.1997), and Cunningham v. Diesslin, 92 F.3d 1054, 1059 (10th Cir.1996), the majority concludes that because the Plea Agreement language at issue does not expressly state that Mr. Alta-mirano-Quintero complied with § 3553(f), or even refer to the provision, the government did not concede that he disclosed all of the necessary information to meet the disclosure requirement. The cited cases, however, are inapposite.
In each of them, the defendant was attempting to introduce a new term into a plea agreement. Here, the Plea Agreement already includes the term in question — the relevant conduct stipulation. The inquiry relates to what that term means. That the “relevant conduct” language does not explicitly refer to § 3553(f) renders its scope, at most, ambiguous. Such ambiguities are “construe[d] ... against the government as the drafter of the agreement,” United States v. Werner, 317 F.3d 1168, 1170 (10th Cir.2003).[4]
Furthermore, simply because the Plea Agreement allows the parties to present additional facts or evidence at sentencing[5] would not necessarily prevent Mr. Altami-rano-Quintero from reasonably believing that the government had conceded that he had already disclosed all “relevant conduct” for safety valve purposes. Relevant conduct does not constitute the entire universe of information that courts properly may consider in imposing sentence. The Plea Agreement merely recognizes that truth.
Absent some restriction in the Guidelines or other law, the sentencing court is *1103 free to “consider, without limitation, any information concerning the background, character and conduct of the defendant.” U.S.S.G. § 1B1.4. Consequently, the Plea Agreement could reasonably be read to allow the parties to provide additional information for the court’s consideration, without its language eroding the foundation for Mr. Altamirano-Quintero’s arguably reasonable belief that the government had conceded that he already had provided all of the information necessary to satisfy the safety valve’s disclosure provision (i.e., information concerning his relevant conduct).[6]
In sum, I disagree with the majority’s decision to reach the issue discussed in Section 11(B), relating to the government’s alleged plea agreement concession. It is a step unnecessary to the proper resolution of this case. Moreover, the majority’s decision to take this step will be costly; its strained analysis contravenes our circuit’s settled principles for interpreting both the Guidelines and plea agreements. Accordingly, although concurring in the result, I cannot fully join the majority’s opinion.

. See, e.g., United States v. Werner, 317 F.3d 1168, 1170 (10th Cir.2003) (construing plea agreement ambiguities against the government, as drafter); United States v. Rockwell Int’l Corp., 124 F.3d 1194, 1199 (10th Cir.1997) ("We will not allow the government to resort to a rigidly literal construction of the language of the plea agreement to frustrate a defendant's reasonable expectations.” (internal quotation marks omitted) (quoting United States v. Shorteeth, 887 F.2d 253, 256 (10th Cir.1989))).

. The Plea Agreement provides in pertinent part:
The parties believe that the sentencing range resulting from the plea agreement is appropriate because all relevant conduct is disclosed; that the stipulated facts by the parties take into account all pertinent sentencing factors with respect to this defendant; and that the charge to which the defendant has agreed to plead guilty adequately reflects the seriousness of the actual offense behavior.
R., Vol. I, Doc. No. 139, at 9-10 (Plea Agreement and Stipulation of Facts Relevant to Sentencing, filed June 20, 2005) (emphasis added).

. Identifying several passages in the Plea Agreement, the majority asserts, “they do not suggest that the Government was conceding that Altamirano-Quintero had already satisfied the safety-valve’s requirement that he 'truthfully' provide[] to the Government all information and evidence [he] has concerning the offense.” Maj. Op. at 1097 (quoting 18 U.S.C. § 3553(f)(5)). I find a less labored interpretation of the language at issue more *1102 persuasive. The government's relevant conduct language, when read in conjunction with the two provisions identified by the majority, could reasonably convey that although Mr. Altamirano-Quintero had revealed sufficient information to satisfy § 3553(f)(5), the government was noncommittal as to whether he had satisfied all of the elements necessary to obtain safety valve relief.

. The majority refers to the relevant conduct stipulation as "standard language prescribed by the local rule.” Maj. Op. at 1097. Although the majority acknowledges, as it must, that such generic language has the power to "bind[] the parties to that agreement,” it states that it "cannot conclude that the Government, by using this standard language, meant to concede in every case that the defendant has satisfied the safety valve’s § 3553(f)(5)'s disclosure requirement.” Id. However, whether the government actually meant to concede that general proposition is not the point. Rather, at issue is what Mr. Altamirano-Quintero reasonably could have concluded the government was giving him through the relevant conduct stipulation. We have acknowledged that "the rules of contract law inform the interpretation and enforcement of promises in a plea agreement.” United States v. Novosel, 481 F.3d 1288, 1291 (10th Cir.2007) (internal quotation marks and brackets omitted) (quoting Rockwell Int’l Corp., 124 F.3d at 1199). Thus, we must rely on the express language of the agreement to discern the parties' intent. United States v. Brye, 146 F.3d 1207, 1210 (10th Cir.1998).

. The Plea Agreement provides:
With the exception of the stipulated facts set forth above, this statement of facts does . not preclude either party from presenting and arguing, for sentencing purposes, additional facts or evidence which a party believes is relevant to sentencing. Further, the Court is not bound by the factual stipulations of the parties. In determining the factual basis for the sentence, the Court may consider not only the stipulations of the parties, but also the results of any pre-sentencing investigation that may be conducted by the U.S. Probation Department, together with any other relevant information that may be brought to the Court's attention.
R., Vol. I, Doc. No. 139 ató.

. Indeed, as the majority correctly recognizes, the informational requirements of the safety valve provision and the substantial assistance provision are not coterminous. Accordingly, if Mr. Altamirano-Quintero had in fact followed the path anticipated by the Plea Agreement and sought substantial assistance relief, he could quite conceivably have provided the government (and, derivatively, the court) with additional information concerning the illegal activities of others that would not have fallen within the scope of the relevant conduct of his offense (i.e., outside of the universe of information that he was required to disclose to obtain safety valve relief).