**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 4, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KENYON RAY VESSELL,

    Defendant - Appellant.

No. 25-5008
(D.C. No. 4:23-CR-00288-JDR-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **McHUGH**, and **FEDERICO**, Circuit Judges.
_____

In August 2022, Defendant Kenyon Ray Vessell was driving about 113 miles per hour in a 65-miles-per-hour zone, and he was under the influence of marijuana. He struck a vehicle, killing one occupant and severely injuring another. Because Vessell is an enrolled member of a Native American tribe and his crime happened in Indian Country, the federal government had jurisdiction over the matter, and a grand jury in the Northern District of Oklahoma charged him with second-degree murder and assault resulting in serious bodily injury.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

As part of a plea deal, Vessell pleaded guilty to involuntary manslaughter (as opposed to second-degree murder) and assault resulting in serious bodily injury. Then, at sentencing, the district court imposed an 84-month prison sentence for each count of conviction, running concurrently.

Vessell now appeals his sentence, but his plea agreement contains an appeal waiver. The government therefore moves to enforce that waiver under *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc). *Hahn* requires this court to ask three questions: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id.* at 1325.

Vessell's counsel filed a response stating "that opposition to the Motion would be frivolous." Resp. to Aplee. Mot. to Dismiss at 1; *see also Anders v. California*, 386 U.S. 738, 744 (1967) ("[I]f [defense] counsel finds [the defendant's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court . . . ."). In particular, counsel examined the three *Hahn* factors and concluded there were no viable arguments to make on Vessell's behalf. The court therefore invited Vessell to file a pro se response. *See id.* ("A copy of counsel's brief should be furnished the [defendant] and time allowed him to raise any points that he chooses . . . ."). Vessell filed such a response. For the reasons explained below, we grant the government's motion.

2

I.    ANALYSIS

A.    **Scope of the Waiver**

Again, our first question when faced with a motion to enforce an appeal waiver is "whether the disputed appeal falls within the scope of the waiver." *Hahn*, 359 F.3d at 1325. As to this, Vessell asserts three arguments, which we discuss in turn.

1.    Need to Identify Appellate Arguments at this Stage

Vessell says he should not be required to explain his appellate arguments at this preliminary stage. But *Hahn* effectively settled this issue, stating that "appellate waivers benefit the government by saving the costs of prosecuting appeals; and only through the efficient dismissal of an appeal will the government receive the benefit of its bargain." 359 F.3d at 1325 (brackets and internal quotation marks omitted). *Hahn* therefore established the procedure that the government has now invoked. *See id.* Thus, despite the preliminary nature of the appeal, Vessell is indeed required to explain what arguments he hopes to bring. Otherwise, this court cannot determine if his appeal falls within the scope of the waiver and the *Hahn* procedure is defeated.

2.    Ineffective Assistance of Counsel

Vessell next says he received ineffective assistance of counsel. Specifically, at his sentencing hearing, the district court decided to vary upwards from the agreed-upon Guidelines range because the court believed the Guidelines range did not adequately reflect the seriousness of Vessell's crime, his criminal history, and the need for deterrence. The district court also viewed the facts of the case as more like second-degree murder (as the grand jury had charged) than involuntary manslaughter.

3

Although Vessell's attorney contested much of the district court's reasoning, Vessell claims she never straightforwardly challenged the analogy to second-degree murder. This, Vessell argues, amounted to ineffective assistance of counsel, which he believes falls outside the scope of the appeal waiver.

Vessell is confusing his waiver of the right to bring a direct appeal (this appeal) and his waiver of the right to collaterally attack his conviction (such as through 28 U.S.C. § 2255). The direct-appeal waiver contains only one exception, namely, if the district court imposes "a sentence that exceeds the statutory maximum." Mot. to Enforce, Attach. 1 at 3. There is no exception for a claim of ineffective assistance. Rather, ineffective assistance is an exception to his waiver of the ability to bring a collateral attack. *See id.* Thus, according to the plain terms of the plea agreement, ineffective assistance does not escape his appellate waiver. *See United States v. Porter*, 405 F.3d 1136, 1142 (10th Cir. 2005) (rejecting a scope-of-waiver argument because the defendant's "interpretation of the waiver clause contradict[ed] the plain language of the plea agreement").

### 3.    Illegal Sentence

Finally, Vessell argues he received an illegal sentence, and he further argues that appeal waivers cannot insulate illegal sentences from review. He does not tell us what he means by "illegal sentence" (*e.g.*, do all sentencing errors result in an illegal sentence?), but that is unimportant here because his argument that *he* received an illegal sentence, even if true, could not avoid the waiver.

Vessell points out that his sentence includes three years of supervised release, and he claims that courts are beginning to realize "there are serious Constitutional questions about the continuing legality of supervised release." Opp'n to Mot. to Dismiss at 4.[1] Whether accurate or not, it would not bring this appeal outside the scope of the waiver, as illustrated by our Porter decision.

In *Porter*, the defendant's appeal waiver contained an exception for "a sentence 'above the maximum statutory penalty provided in the statute of conviction.'" 405 F.3d at 1142. The defendant nonetheless hoped to argue that the Supreme Court's then-recent decision in *Blakely v. Washington*, 542 U.S. 296 (2004), showed that the U.S. Sentencing Guidelines were unconstitutional. *Porter*, 405 F.3d at 1142 & n.2. While his appeal was pending, the Supreme Court held that the reasoning of *Blakely* indeed rendered the Guidelines unconstitutional to the extent they were mandatory. *See United States v. Booker*, 543 U.S. 220, 226–27 (2005). The defendant then submitted additional briefing claiming that "*Booker* error is structural error not subject to plain error review." *Porter*, 405 F.3d at 1142 n.2. We

---

[1] He says this is evident in *United States v. Haymond*, 588 U.S. 634 (2019). *Haymond* examined the constitutionality of a statute requiring a mandatory minimum of five years in prison for certain supervised-release violations. *Id.* at 639 (plurality op.). A four-justice plurality held the statute was unconstitutional for essentially the same reasons that facts which increase the mandatory minimum or statutory maximum penalties may not be used to increase a sentence unless found by a jury or conceded. *Id.* at 643–46. Justice Breyer, writing for himself, found the statute unconstitutional on narrower grounds. *Id.* at 657–59. The dissent would have upheld the statute and accused the plurality opinion of "suggest[ing] that the entire system of supervised release, which has been an integral part of the federal criminal justice system for the past 35 years, is fundamentally flawed in ways that cannot be fixed." *Id.* at 660 (Alito, J., dissenting).

stated, however, that we were "not required to reach the merits of these claims because we [found] the plea agreement enforceable." *Id.* We elaborated that the exception for sentences above the statutory maximum meant exactly what it said, and nothing beyond that. *Id.* at 1142–43. In short, the defendant in *Porter* had a winning argument that the Guidelines were unconstitutional, but his appeal waiver still applied because there was no exception for that argument.

Vessell's appeal waiver, like that of the *Porter* defendant, contains an exception only for "a sentence that exceeds the statutory maximum." Mot. to Enforce, Attach. 1 at 3. Whether or not he has a viable constitutional attack on supervised release, it is not within the scope of that exception. And as *Porter* illustrates, the fact it is a constitutional argument does not change the analysis.

### 4.    This Court's Review of the Record

In a situation such as this, where the defense attorney concludes there is no nonfrivolous argument to make on behalf of the defendant, this court must make "a full examination of all the proceedings" to ensure defense counsel is correct. *Anders*, 386 U.S. at 744. We accordingly note that Vessell's 84-month prison sentence is lower than the statutory maximum of eight years for involuntary manslaughter, *see* 18 U.S.C. § 1112(b), and ten years for assault resulting in serious bodily injury, *see id.* § 113(a)(6). Thus, this appeal does not come within the explicit exception to the appeal waiver.

We have also reviewed the plea agreement and the change-of-plea proceedings. One passage from the change-of-plea hearing transcript catches our attention. There,

the district court loosely summarized the scope of the waiver: "Do you understand that about the only exception to this broad waiver . . . of your right to file a direct appeal or a collateral attack would be if you could somehow show ineffective assistance of counsel by [your attorney]?" Mot. to Enforce, Attach. 3 at 26. This summary may be why Vessell believes he may bring an ineffective-assistance claim at this stage. But the plea agreement concludes with an integration clause stating that it contains the parties' whole agreement and cannot be changed unless the change is "executed in writing and signed by all of the parties." *Id.*, Attach. 1 at 15. Thus, if the district court's summary was inconsistent with the plea agreement, the plea agreement controls. *Cf. United States v. Rockwell Int'l Corp.*, 124 F.3d 1194, 1199–1200 (10th Cir. 1997) (refusing, in light of an integration clause, to consider evidence that a plea agreement contained an unwritten term); *United States v. Montano*, 472 F.3d 1202, 1205 (10th Cir. 2007) ("[A judge's] oral modification of an accepted plea agreement [at sentencing] does not alter the substance of the agreement.").

For all these reasons, we conclude this appeal falls within the scope of the waiver.

### B.    Knowing and Voluntary Waiver

Vessell offers no argument that he unknowingly or involuntarily waived his appeal rights. Reviewing the matter ourselves, we note that Vessell initialed each page of his plea agreement (including the page containing the appeal waiver) and signed the agreement, and the district court confirmed Vessell's understanding and acceptance of the waiver during the change-of-plea hearing. But this also brings us

7

back to the matter just discussed, *i.e.*, the district court's loose summary of the appeal and collateral attack waivers, and what that summary could have led Vessell to believe about his ability to bring an ineffective-assistance claim on appeal. In theory, it could raise a question of whether Vessell knowingly agreed to the terms of the appeal waiver. But we ultimately find no nonfrivolous argument that Vessell might have made on this account.

We have apparently not established whether a district court's misleading statement in this context (assuming it was misleading) should be reviewed for harmless error or, if not objected to in the district court, for plain error. Neither standard yields a viable argument.

Assuming the standard is harmless error, the district court's misstatement of the appeal waiver's scope was harmless because Vessell did not lose his ability to bring an ineffective-assistance claim, he simply must bring it through a collateral attack rather than on direct appeal. Indeed, under the circumstances, he *must* bring his claim through a collateral attack because the record is not adequately developed to consider the claim in this appeal.[2]

---

[2] "Generally, we only consider ineffective assistance of counsel claims on collateral review." *Hahn*, 359 F.3d at 1327 n.13. Vessell claims this is one of those "rare [ineffective assistance] claims which are fully developed in the record [and] may be brought . . . on direct appeal," *United States v. Galloway*, 56 F.3d 1239, 1242 (10th Cir. 1995), but he is incorrect. Ineffective assistance requires: (1) constitutionally deficient performance by the defense attorney that (2) prejudices the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Vessell's argument relates only to the first requirement. Even if the record were adequately developed as to that requirement (and we offer no opinion on that), the record is not developed as to the second requirement—or in other words, whether the argument

Assuming the standard is plain error, Vessell would be required to establish that the error affected his substantial rights, meaning he suffered prejudice. *See United States v. Edgar*, 348 F.3d 867, 872 (10th Cir. 2003). And in this context, prejudice means "he would not have pleaded guilty" but for the alleged error. *Id.* Neither the record nor Vessell's appellate filings give us any reason to believe his decision to plead guilty stood or fell with the relatively obscure question of when and where he could raise an ineffective-assistance claim.

We thus see no path by which the district court's oral summary of the appeal waiver could result in a knowing-and-voluntary argument sufficient to overcome the appeal waiver.

## C.     Miscarriage of Justice

In this context, a miscarriage of justice occurs "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Hahn*, 359 F.3d at 1327 (bracketed numerals in original; internal quotation marks omitted).

Vessell returns to his claim that he should not be required to explain his appeal arguments at this preliminary stage, and he says it is a miscarriage of justice to do so.

---

Vessell's attorney allegedly missed would have made any difference to the district court in its upward-variance decision. *See id.* at 694 (defining prejudice as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

9

This cannot qualify as a miscarriage of justice in this context. *See United States v. Shockey*, 538 F.3d 1355, 1357 (10th Cir. 2008) (noting that the four miscarriage-of-justice possibilities enumerated in *Hahn* are "exclusive").

If Vessell's illegal-sentence argument, discussed above, was also meant as a claim that his waiver is otherwise unlawful, we disagree. We have already "rejected . . . the assertion that the occurrence of constitutional errors during sentencing is sufficient to establish that the waiver itself was unlawful." *United States v. Holzer*, 32 F.4th 875, 887 (10th Cir. 2022).[3]

Having independently reviewed the record, we do not discern any nonfrivolous argument that would meet the *Hahn* miscarriage-of-justice standard. We therefore find no miscarriage of justice.

### D.    Vessell's Second Pro Se Response

Eleven days after the court received Vessell's pro se response, the court received a second response from him. In this filing, Vessell claims he instructed his attorney not to file an *Anders* brief, or at least to withdraw before filing an *Anders* brief, so he would not be prejudiced by his own attorney stating that his case was frivolous. He further complains that his attorney's *Anders* brief was not an adequate *Anders* brief because it failed to attack the judge's upward variance. Finally, he asks the court to allow him to proceed pro se.

---

[3] To be clear, we do not conclude that any constitutional error infects Vessell's sentence. We express no opinion on that either way. *Holzer* establishes, however, that such an error would not make the appeal waiver unlawful.

By inviting and accepting his pro se response to the government's motion, the court is already allowing Vessell to proceed pro se, so this request is moot. The remainder of his arguments change nothing about our disposition of this appeal.

First, a client cannot prevent counsel from filing an *Anders* brief. "[C]ounsel is under ethical obligations to the client *and* to the court." *United States v. Calderon*, 428 F.3d 928, 931 (10th Cir. 2005) (emphasis added). If counsel has concluded there is no nonfrivolous basis to oppose the government's motion to dismiss, counsel is "performing the function of [an] officer of the court" when he or she tells us as much. *Id.*

Second, the client suffers no prejudice when counsel files an *Anders* brief. It is "the court—not counsel—[that] proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." *Anders*, 386 U.S. at 744. We do not defer to counsel's opinion of that matter.

Third, counsel's failure to raise the upward-variance issue does not show that she shirked her *Anders* duties. In the current context, the question is not whether there is any nonfrivolous basis for reversing the district court's judgment, but whether there is any nonfrivolous basis for overcoming the appeal waiver. As we have already explained, Vessell's argument about the upward variance, even if framed as ineffective assistance of counsel, cannot overcome the appeal waiver. In any event, Vessell suffered no prejudice because he raised the argument himself.

11

## II.    CONCLUSION

We grant the government's motion to enforce the appeal waiver and dismiss this appeal.

Entered for the Court

Per Curiam