FILED
United States Court of Appeals
Tenth Circuit

December 28, 2007

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

LUIS ALTAMIRANO-QUINTERO,

      Defendant - Appellant.

No. 06-1254

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 04-cr-188-REB)**

---

Paul H. Schwartz, Cooley Godward Kronish LLP, Broomfield, Colorado, for Defendant-Appellant Luis Altamirano-Quintero.

Martha A. Paluch, Assistant United States Attorney (Troy A. Eid, United States Attorney, with her on the brief) for Plaintiff-Appellee United States of America.

---

Before **TYMKOVICH**, **EBEL** and **HOLMES**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

      Defendant-Appellant Luis Altamirano-Quintero appeals the district court's imposition of a statutory mandatory minimum ten-year sentence for his drug conspiracy conviction. Altamirano-Quintero asserts that the district court should

have applied 18 U.S.C. § 3553(f)'s safety valve to impose a sentence less than the mandatory minimum. The district court, however, determined that Altamirano-Quintero was not eligible for the safety valve because he had not provided the Government with all the information he had concerning his offense. That determination was not in error. Having jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we therefore AFFIRM.

## I. BACKGROUND

Law enforcement officials found over 670 grams of a substance containing methamphetamine in Altamirano-Quintero's car. As a result, he and a companion, his co-defendant, were arrested for drug trafficking. Altamirano-Quintero pled guilty to one count of conspiring to possess, with the intent to distribute, 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846, in exchange for the Government's agreement to drop a second charge.[1] Altamirano-Quintero faced a statutory mandatory minimum ten-year sentence for this conviction. See 21 U.S.C.

---

[1] 21 U.S.C. § 841(a)(1) makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with the intent to manufacture, distribute, or dispense, a controlled substance." Under 21 U.S.C. § 812(a), (c)(Schedule III)(a)(3), "[a]ny substance (except an injectable liquid) which contains any quantity of methamphetamine," is a controlled substance. And 21 U.S.C. § 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

2

§ 841(b)(1)(A)(viii).[2]

Altamirano-Quintero had two means available to him to avoid that mandatory minimum ten-year sentence. First, his plea agreement anticipated that he would be debriefed by, and would cooperate with, the Government. If, as a result, he provided the Government with "substantial assistance," then the Government agreed to move, under U.S.S.G. § 5K1.1[3] and 18 U.S.C. § 3553(e),[4]

---

[2]Section 841(b)(1)(A)(viii) provides that anyone committing a drug offense involving "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine . . . shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life."

[3]Section 5K1.1 specifically provides that,

> [u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
>
> (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
> > (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
> >
> > (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
> >
> > (3) the nature and extent of the defendant's assistance;
> >
> > (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(continued...)

3

for a downward departure at sentencing. Such a motion would have enabled the court to impose a sentence below the mandatory minimum ten-year sentence, see 18 U.S.C. § 3553(e), and below the advisory guideline range, see U.S.S.G. § 5K1.1. See United States v. Belt, 89 F.3d 710, 714 n.5 (10th Cir. 1996).

Second, Altamirano-Quintero could qualify for the statutory safety valve that 18 U.S.C. § 3553(f) provides from mandatory minimum sentencing. Section 3553(f) permits the district court to disregard a statutory mandatory minimum sentence and instead impose a sentence within the advisory sentencing guidelines range, if the defendant meets five criteria.[5] The only one of those criteria at issue

---

[3](...continued)

> (5) the timeliness of the defendant's assistance.

In sentencing Altamirano-Quintero, the district court used the 2004 sentencing guidelines. At the time of sentencing, however, in June 2006, the 2005 guidelines were in effect. See U.S.S.G. § 1B1.11 (providing that the court shall use guidelines in effect on date of sentencing, unless doing so would violate the Constitution's Ex Post Facto Clause). In this case, however, Altamirano-Quintero concedes that there is no difference between the two guideline versions that is relevant to the issues he presents on appeal.

[4]Section 3553(e) provides, in relevant part, that "[u]pon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."

[5]Section 3553(f) provides:

> Notwithstanding any other provision of law, in the case of an offense

(continued...)

[5](...continued)
under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) . . . , the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that —

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f); see also U.S.S.G. § 5C1.2(a) (similarly providing that "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the

(continued...)

in this case is § 3553(f)(5)'s requirement that Altamirano-Quintero "truthfully provide[] to the Government all information and evidence [he] ha[d] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."[6]  18 U.S.C. § 3553(f)(5).

---

[5](...continued)
defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5)").  "If the district court makes these five findings, the defendant is eligible instead for the [advisory sentencing] range proscribed by the United States Sentencing Guidelines." United States v. Cousins, 455 F.3d 1116, 1124 (10th Cir.), cert. denied, 127 S. Ct. 162, 706 (2006).  In addition, he will be eligible for a two-level decrease in his offense level as calculated under the guidelines.  See U.S.S.G. § 2D1.1(b)(7).  In this case, the parties agree that Altamirano-Quintero satisfied the first four 18 U.S.C. § 3553(f) factors.

[6]Although these statutory and guideline provisions provide two methods by which a defendant can avoid a statutory mandatory minimum sentence, these two methods provide two very different means to do so.  See United States v. Acosta-Olivas, 71 F.3d 375, 379 (10th Cir. 1995) (noting "[s]ection 5K1.1 concerning substantial assistance operates very differently from § 5C1.2," the guidelines' safety valve provision).

If a defendant provides "substantial assistance," 18 U.S.C. § 3553(e) permits the district court to impose a sentence below the statutory mandatory minimum, while U.S.S.G. § 5K1.1 permits the district court, for the same reason, to impose a sentence below the advisory guideline range.  Cf. Belt, 89 F.3d at 714 & n.5 (case decided prior to United States v. Booker, 543 U.S. 220 (2005), treating guideline range as mandatory).  The safety valve, on the other hand, only permits the district court to impose a sentence below the statutory mandatory minimum sentence, but still within the advisory guideline range (absent other factors that might warrant the district court imposing a below-guideline sentence). See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2; cf. Belt, 89 F.3d at 714 & n.5 (pre-Booker case treating guideline range as mandatory).

Further, in order to obtain the benefit of 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, a defendant must provide the government with "substantial assistance in the investigation or prosecution of another person."  18 U.S.C. § 3553(e)

(continued...)

6

After he pled guilty, Altamirano-Quintero decided not to be debriefed by the Government. At sentencing, therefore, the Government did not make any motion under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. Defense counsel acknowledged that the Government's decision not to make such a motion was warranted under the circumstances. Nevertheless, counsel argued that

---

[6](...continued) (emphasis added). If he does, the Government can move for such a departure, see 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1; see also Acosta-Olivas, 71 F.3d at 379, but that motion is ordinarily left to the Government's discretion (unless the Government gives up that discretion as part of a plea agreement). See United States v. Courtois, 131 F.3d 937, 938-39 (10th Cir. 1997). Upon the Government's motion, the sentencing court can depart below the statutory mandatory minimum, and below the advisory guideline range, but only after the court considers "the significance and usefulness of the defendant's assistance," as well as the timeliness, nature, extent, truthfulness, completeness and reliability of the defendant's assistance and any injury or risk of injury the defendant suffered as a result of his cooperation with the Government. See 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1.

To satisfy the safety valve, on the other hand, a defendant has to meet the other four statutory criteria (no more than one criminal history point, no use or credible threat of use of violence or a firearm or other dangerous weapon in committing the relevant offense, the offense did not result in death or serious bodily injury to any person, and the defendant was not a leader or organizer of the criminal endeavor), in addition to giving the Government all of the information he has concerning his "offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f). But, unlike 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, the fact that "the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude" him from satisfying the requirements for the application of the safety valve. 18 U.S.C. § 3553(f)(5); see also Acosta-Olivas, 71 F.3d at 379. Moreover, if the defendant satisfies these criteria for the safety valve, it is unnecessary for the Government to make a motion for a sentence less than the statutory mandatory minimum; the defendant is, instead, entitled to that relief. See 18 U.S.C. § 3553(f); see also Acosta-Olivas, 71 F.3d at 379.

Altamirano-Quintero still qualified for the safety valve under 18 U.S.C. § 3553(f), based upon the facts Altamirano-Quintero had admitted in his plea agreement.

The district court, however, found that Altamirano-Quintero was not eligible for the safety valve:

> Paragraph 5 of subsection F of Section 3553 provides in relevant part as follows, and I quote, "Not later than the time of the sentencing hearing, the defendant has truthfully provided to the government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."
>
> On this record, that fifth requirement has not been satisfied by the defendant, and therefore, the defendant is not entitled to safety valve relief under 18 U.S.C. Section 3553(f), and therefore the defendant's request for downward departure for a sentence below the statutory minimum should be denied.

The court then sentenced Altamirano-Quintero to the statutory mandatory minimum 120 months' imprisonment.

## II. DISCUSSION

On appeal, Altamirano-Quintero challenges only the district court's imposition of the mandatory minimum ten-year sentence, arguing that the district court erred in finding him ineligible for the safety valve. In support of that contention, he asserts three arguments, which are addressed below.

**A.** **Whether the district court erred as a matter of law in concluding Altamirano-Quintero was not eligible for the safety valve solely because he was not debriefed by the Government.**

Altamirano-Quintero first argues that the district court incorrectly held, as a

matter of law, that the safety valve provision <u>required</u> that he submit to a Government debriefing.  This court reviews <u>de novo</u> the district court's statutory interpretation of the safety-valve provision.  <u>See</u> <u>United States v. Stephenson</u>, 452 F.3d 1173, 1180 (10th Cir. 2006).

Both Altamirano-Quintero and the Government agree that § 3553(f)(5) does not specifically <u>require</u> that a defendant undergo a government debriefing.[7]  <u>See also</u> <u>United States v. Montanez</u>, 82 F.3d 520, 522-23 (1st Cir. 1996) (drawing this same conclusion).  But in this case, the district court did not hold that § 3553(f) required such a debriefing.

At sentencing, the district court first addressed whether the Government would file a motion under U.S.S.G. § 5K1.1.  The court specifically noted that

> [i]n the Plea Agreement and Stipulation of Facts Relevant to

---

[7] 18 U.S.C. § 3553(f)(5) does not specifically mention debriefing.  Rather, it only requires that "the defendant . . . truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  <u>Id.</u> Section 3553(f) does not further prescribe how the defendant must convey this information to the Government.  <u>See</u> <u>United States v. Montanez</u>, 82 F.3d 520, 522-23 (1st Cir. 1996).  There may be many ways that a defendant could provide the Government with information sufficient to satisfy § 3553(f)(5). <u>See</u> <u>Stephenson</u>, 452 F.3d at 1179-81 (defendant attempted to satisfy § 3553(f)(5) through a "proffer letter" sent to the government, but failed to include all the information he had); <u>id.</u> at 1181-82 (considering whether the defendant ever requested an interview with the Government); <u>United States v. Virgen-Chavarin</u>, 350 F.3d 1122, 1130 (10th Cir. 2003) (defendant provided affidavit, but failed to provide complete information); <u>United States v. Gama-Bastidas</u>, 142 F.3d 1233, 1243 (10th Cir. 1998) (holding defendant's attempt to provide government with information in the judge's chambers immediately before sentencing was "not too late") (quotation omitted).

9

Sentencing, . . . the parties acknowledged that the defendant had expressed the intent to cooperate with the office of the United States Attorney for the District of Colorado by providing testimony, documents, and other information known to the defendant about the criminal wrongdoing of other persons.

The defendant in his plea agreement agreed that he shall cooperate fully with the government in the ways described in that plea agreement. . . .

In that same plea agreement, the government reserved the sole right to evaluate the nature and extent of the cooperation if any of the defendant, and to make the cooperation of the defendant, if any, known to the court at the time of sentencing.

At the time of the plea agreement, the defendant had not been debriefed. At that time, the parties stipulated that the defendant would submit to a proffer or interview by agents of the federal government between the date of the entry of the plea in June 2005, and the first [scheduled] sentencing hearing in September of 2005.

Due to actions of the defendant, that debriefing and that proffer did not occur. Had the defendant cooperated completely, had the defendant submitted to the debriefing and proffer included in the plea agreement, the government anticipated filing a motion under guideline Section 5K1.1, and the provisions of 18 U.S.C. § 3553(e), requesting a downward departure for substantial assistance.

Because the defendant breached that portion of his plea agreement, the government has not filed any such motion. And there is no request to depart downward from the guideline range based on substantial assistance.

The district court then immediately, but separately, turned to the question of whether Altamirano-Quintero was eligible for the 18 U.S.C. § 3553(f) safety valve.

The defendant requests that he be afforded the benefits of the so-called safety valve, which implicates 18 U.S.C. Section 3553(f). In

10

turn, subsection (f) of Section 3553 has five components. No. 5 is at issue . . . in the context of the request by the defendant.

Paragraph 5 of subsection F of Section 3553 provides in relevant part as follows, and I quote, "Not later than the time of the sentencing hearing, the defendant has truthfully provided to the government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."

On this record, that fifth requirement has not been satisfied by the defendant, and therefore, the defendant is not entitled to safety valve relief under 18 U.S.C. Section 3553(f), and therefore the defendant's request for downward departure for a sentence below the statutory minimum should be denied.

Contrary to Altamirano-Quintero's argument on appeal, the district court did not specifically hold that § 3553(f)(5), as a matter of law, requires a debriefing. Therefore, the district court did not, as a factual matter, commit the error asserted by Altamirano-Quintero of requiring a debriefing with the Government before Altamirano-Quintero could qualify for the § 3553(f) safety valve.

**B.    Whether the Government conceded in the plea agreement that Altamirano-Quintero had already complied with § 3553(f)(5) based upon the facts he admitted in the plea agreement.**

Altamirano-Quintero next argues that the Government stipulated, in the plea agreement, that he had, at the time he pled guilty, already complied with § 3553(f)(5)'s requirement that he truthfully disclose all the information that he had regarding his offense. We disagree.

11

This court reviews the terms of the plea agreement de novo.[8] See United States v. Rodriguez-Delma, 456 F.3d 1246, 1250 (10th Cir. 2006), cert. denied, 127 S. Ct. 1338 (2007). In interpreting a plea agreement, we apply "[g]eneral principles of contract law . . . , looking to the [agreement's] express language and construing any ambiguities against the government as the drafter of the agreement." Id. at 1250-51 (quotation omitted); see also United States v. Bunner, 134 F.3d 1000, 1003 (10th Cir. 1998). "The plea agreement must be construed according to what [the] defendant reasonably understood at the time he made the agreement." United States v. Prince, 204 F.3d 1021, 1023 (10th Cir. 2000).

The plea agreement Altamirano-Quintero had with the Government contained five sections.[9] The first section stated the "Plea Agreement"; the second set forth the statutory penalties that Altamirano-Quintero faced by pleading guilty to the drug conspiracy count; the third set forth the parties'

---

[8]Altamirano-Quintero never argued at sentencing that the Government had, in the plea agreement, stipulated that he had already satisfied § 3553(f)(5). This might suggest our review should instead be for plain error. See Fed. R. Crim. P. 52(b). Nevertheless, in the analogous situation where a defendant fails to object to the Government's breaching a plea agreement at the time the breach occurs, this court still reviews the terms of the plea agreement de novo. See United States v. Rodriguez-Delma, 456 F.3d 1246, 1250 (10th Cir. 2006), cert. denied, 127 S. Ct. 1338 (2007); United States v. Werner, 317 F.3d 1168, 1169 (10th Cir. 2003); United States v. Peterson, 225 F.3d 1167, 1170 (10th Cir. 2000) (on reh'g). We follow that reasoning in this case and interpret the plea agreement here de novo.

[9]The general format of a plea agreement in the District of Colorado is prescribed by the District's Local Rule 11.1(C) and Appendix J.

12

"Stipulation to Relevant Facts" underlying Altamirano-Quintero's guilty plea; and the fourth section estimated how the guidelines might apply, predicting Altamirano-Quintero would be subject to an advisory sentencing range of between 87 and 108 months, were he not subject to the statutory mandatory minimum ten-year sentence. The plea agreement's fifth and final section was entitled "Why the Proposed Plea Disposition is Appropriate." In the first paragraph of that two-paragraph section,[10] the plea agreement stated:

> The parties believe that the sentencing range resulting from the plea agreement is appropriate because <u>all relevant conduct is disclosed</u>; that the stipulated facts by the parties take into account <u>all pertinent sentencing factors</u> with respect to this defendant; and that the charge to which the defendant has agreed to plead guilty adequately reflects the seriousness of the actual offense behavior.

(Emphasis added.)

Based upon this language in the last section, Altamirano-Quintero argues on appeal that the Government conceded in the plea agreement that he had already satisfied § 3553(f)(5)'s requirement that he "truthfully provide[] to the Government all information and evidence [he] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." We reject Altamirano-Quintero's interpretation of the plea agreement.

The paragraph in the plea agreement on which Altamirano-Quintero relies does not address 18 U.S.C. § 3553(f) at all, but instead clearly concerns the

---

[10]The second paragraph of this final section asserted that the agreement stated the parties' entire agreement.

application of the sentencing guidelines to Altamirano-Quintero.[11]  This is logical

because this fifth section of the plea agreement immediately follows the fourth

section's estimation of the advisory sentencing range to which

Altamirano-Quintero would be subject.

Moreover, the particular phrases in the agreement to which

Altamirano-Quintero cites in support of his interpretation—"[t]he parties believe

that the sentencing range resulting from the proposed plea agreement is

appropriate because all relevant conduct is disclosed" and "the stipulated facts by

the parties take into account all pertinent sentencing factors with respect to this

defendant"—directly concern the "relevant conduct" on which the sentencing

guidelines calculate an advisory sentencing range.  See U.S.S.G. § 1B1.3.  More

---

[11]The language of this paragraph tracks U.S.S.G. § 6B1.2, which requires that, before accepting a plea agreement in which the Government has agreed to drop a pending charge, a court must satisfy itself that the agreement still reflects the seriousness of the defendant's offense and will not undermine the statutory purposes of sentencing:

> In the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges ([Fed. R. Crim. P.] 11(c)(1)(A)), the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines.

> However, a plea agreement that includes the dismissal of a charge or a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted.

specifically, the guidelines calculate a defendant's offense level based on his

"relevant conduct," which in pertinent part, includes the following:

> Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
>
> (1)    (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
>    (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for the offense;
>
>    . . . .
>
> (3)    all harm that resulted from the acts and omissions specified in subsection[] (a)(1) . . . above, and all harm that was the object of such acts and omissions; and
>
> (4)    any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3.

Relevant conduct for sentencing purposes, therefore, "comprises more,

often much more, than the offense of conviction itself, and may include

uncharged and even acquitted conduct." United States v. Allen, 488 F.3d 1244, 1254-55 (10th Cir. 2007). This relevant conduct, however, still "must relate to the offense of conviction." Id. at 1255. And where, as here, the offense of conviction involves criminal activity undertaken jointly with others, the relevant conduct includes "'all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.'" Stephenson, 452 F.3d at 1180 (quoting U.S.S.G. § 1B1.3(a)(1)(B)).

Courts addressing the requirements for a defendant to meet the safety valve under 18 U.S.C. § 3553(f) have incorporated the sentencing guidelines' concept of relevant conduct. See Stephenson, 452 F.3d at 1180; see also Virgen-Chavarin, 350 F.3d at 1130. Thus, this court has held that § 3553(f)'s requirement that a defendant "provide . . . the Government [with] all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan," 18 U.S.C. § 3553(f)(5), "is defined as 'the offense of conviction and all relevant conduct,'" Stephenson, 452 F.3d at 1180 (quoting U.S.S.G. § 5C1.2, cmt. n. 3); see also Virgen-Chavarin, 350 F.3d at 1130. Thus, the offense of conviction and the related relevant conduct establish the parameters of the criminal activity about which a defendant must give the Government all the information he has in order to qualify for the safety valve under 18 U.S.C. § 3553(f). See Stephenson, 452 F.3d at 1180; Virgen-Chavarin, 350 F.3d at 1129-30; Acosta-Olivas, 71 F.3d at 377-78; see also

16

United States v. Sanchez, 475 F.3d 978, 981 (8th Cir. 2007); United States v. Montes, 381 F.3d 631, 635-36 (7th Cir. 2004); United States v. Johnson, 375 F.3d 1300, 1302-03 (11th Cir. 2004) (per curiam); United States v. Salgado, 250 F.3d 438, 459 (6th Cir. 2001); United States v. Cruz, 156 F.3d 366, 371 (2d Cir. 1998); United States v. Miller, 151 F.3d 957, 958, 959-61 (9th Cir. 1998); United States v. Sabir, 117 F.3d 750, 753 (3d Cir. 1997).

The plea agreement's indication in this case that "all relevant conduct" has been disclosed sets the parameters for the criminal activity about which the safety valve required Altamirano-Quintero to give the Government all the information he had. But this language in the plea agreement did not further indicate that Altamirano-Quintero had already provided the Government with that information. Cf. Stephenson, 452 F.3d at 1180-81 (noting the relevant conduct about which the defendant was required to inform the Government, in order to qualify for the safety valve, included the drug trafficking the defendant undertook jointly with co-conspirators, but upholding the district court's factual finding that the defendant had failed to give the Government all of the information he had about that jointly undertaken conduct).

Our conclusion here is bolstered by two facts. First, and most telling, this paragraph in the plea agreement makes no reference at all to 18 U.S.C. § 3553(f). In fact, the plea agreement as a whole makes only two fleeting references to 18 U.S.C. § 3553(f)'s safety valve, and those references are not made in connection

17

with the language on which Altamirano-Quintero relies here.  In the plea

agreement's fourth section, in which the parties estimated the advisory guideline

range that would apply to Altamirano-Quintero, if he were not subject to the

statutory mandatory minimum ten-year sentence, the plea agreement notes that, if

Altamirano-Quintero "is otherwise eligible, the Government would stipulate to

a . . . 2-level 'safety-valve' reduction" in his offense level available under the

guidelines.  Later in that same fourth section, the plea agreement notes that,

"because the offense of conviction in this case involve[s] 500 grams or more of a

mixture and substance containing methamphetamine, the mandatory minimum

sentence of 120 months is applicable to this defendant unless the defendant is

eligible for the 'safety valve' reduction set forth above."  Those are the only

references in the plea agreement to § 3553(f), and they do not suggest that the

Government was conceding that Altamirano-Quintero had already satisfied the

safety valve's requirement that he "truthfully provide[] to the Government all

information and evidence [he] has concerning" his offense.  18 U.S.C.

§ 3553(f)(5); cf. United States v. Reyes Pena, 216 F.3d 1204, 1211-12 (10th Cir.

2000) (rejecting argument that Government had promised not to seek the

application of a specific enhancement to the defendant's offense level where the

plea agreement never mentioned that specific enhancement); United States v.

Rockwell Int'l Corp., 124 F.3d 1194, 1199 (10th Cir. 1997) (noting that the

Government's obligations under plea agreement "do not issue from mere

18

silence"); Cunningham v. Diesslin, 92 F.3d 1054, 1059 (10th Cir. 1996) (rejecting defendant's argument that the plea agreement entitled him to mandatory parole because "application of mandatory parole to [his] sentence is neither an explicit nor an implicit part of the plea offer").

Second, the language in the plea agreement on which Altamirano-Quintero relies is standard language prescribed by the local rule. See D.C.COLO.LCrR 11.1(C) and App. J. Of course, including this language in the plea agreement binds the parties to that agreement. But relying on the express language of the agreement, see Rodriguez-Delma, 456 F.3d at 1250-51, we cannot conclude that the Government, by using this standard language, meant to concede in every case that the defendant has satisfied the safety valve's § 3553(f)(5)'s disclosure requirement.

Nor can we conclude that Altamirano-Quintero could have "reasonably understood" the plea agreement to include such a government concession. Instead, the plea agreement clearly contemplates that there would be additional information that the court would consider at sentencing:

> With the exception of the stipulated facts set forth above, this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or evidence which a party believes is relevant to sentencing. Further, the Court is not bound by the factual stipulations of the parties. In determining the factual basis for the sentence, the Court may consider not only the stipulations of the parties, but also the results of any pre-sentencing investigation that may be conducted by the U.S. Probation Department, together with any other relevant information that may be brought to the Court's attention.

19

This language, then, in no way establishes that the parties believed that Altamirano-Quintero had already fully disclosed all of the information he had for § 3553(f) purposes.

For these reasons, we conclude that the language contained in the plea agreement's fifth section does not amount to a Government concession that Altamirano-Quintero had already complied with 18 U.S.C. § 3553(f) at the time he pled guilty. Nor could Altamirano-Quintero, at the time he entered into the agreement, have reasonably understood this language to mean that he had already met § 3553(f)(5)'s requirements. Therefore, Altamirano-Quintero's interpretation of the plea agreement, as he asserts it now on appeal, is not reasonable. See Prince, 204 F.3d at 1023 (rejecting defendant's interpretation because it was not reasonable); cf. United States v. Brye, 146 F.3d 1207, 1211 (10th Cir. 1998) (declining to give plea agreement "nonsensical" interpretation).

**C. Whether the district court clearly erred in finding that Altamirano-Quintero was not eligible for safety-valve relief because he had not disclosed to the Government all of the information he had concerning his offense.**

Lastly, Altamirano-Quintero asserts that the district court's finding that he did not qualify for § 3553(f)'s safety valve was clearly erroneous. The district court found that Altamirano-Quintero did not qualify because he had not truthfully disclosed all the information he had concerning his offense.

This court reviews the district court's determination of a defendant's

eligibility for the safety valve for clear error.  See Stephenson, 452 F.3d at 1180;

see also United States v. Payton, 405 F.3d 1168, 1170-71 (10th Cir. 2005) (noting

this remains the standard even after Booker, 543 U.S. 220).  The specific question

posed by § 3553(f)(5), whether or not a defendant has provided the Government

with truthful and complete information, is also a factual determination reviewed

for clear error.  See Gama-Bastidas, 142 F.3d at 1241-43.  In conducting this

clear-error review, "we are cognizant that the district court's application of the

safety valve is fact specific and dependent on credibility determinations that

cannot be replicated with the same accuracy on appeal."  Stephenson, 452 F.3d at

1180 (quotation, alteration omitted).  It was Altamirano-Quintero's burden to

prove, by a preponderance of the evidence, that he did truthfully provide the

Government with all the information he had.[12]  See id. at 1179.

At sentencing, the district court had before it the facts to which the parties

stipulated in the plea agreement.  Altamirano-Quintero argues that, because there

is no indication that those facts are untruthful, they are sufficient to satisfy his

burden under § 3553(f)(5).  A defendant's disclosure, however, "must not merely

be truthful but also complete."  Stephenson, 452 F.3d at 1180 (quotation omitted).

Here, there are obvious informational gaps in the facts Altamirano-Quintero

---

[12]For this reason, Altamirano-Quintero's argument on appeal that the Government has not shown what information he failed to disclose is unavailing. See United States v. Salazar-Samaniega, 361 F.3d 1271, 1276-77 (10th Cir. 2004) (rejecting this same argument).

21

admitted when he pled guilty.  Altamirano-Quintero admitted that he had "670.2 grams of a mixture" containing methamphetamine in his car, which he had driven from California to Denver with a co-defendant.  But Altamirano-Quintero does not indicate how or where he got the methamphetamine, or what he intended to do with it.  See Montanez, 82 F.3d at 523 (affirming district court's finding that the defendant was not eligible for safety-valve relief on the basis of a similar gap in information).

More to the point, this court, on several previous occasions, has held that where, as here, a defendant pleads guilty to conspiring with his co-defendant "and with other persons, known and unknown to the Grand Jury," the defendant does not comply with § 3553(f)(5) without identifying the other participants in the conspiracy, or at least explaining why he is unable to identify those other participants.  See Stephenson, 452 F.3d at 1180-81 (holding that, "[w]hen the offense involves conspiracy or a jointly undertaken criminal venture, we require the defendant to disclose not only everything he knows about his own actions, but also everything he knows about his co-conspirators"); Virgen-Chavarin, 350 F.3d at 1130 (same); Acosta-Olivas, 71 F.3d at 377-78 (same).

In this case, Altamirano-Quintero has never identified any of the other participants in the charged drug conspiracy.  Nor does he explain why he could not do so.  See Stephenson, 452 F.3d at 1180-81 (upholding denial of safety-valve relief where it appeared "highly unlikely" that the defendant "did not know the

22

identities of those individuals who were involved in assisting" him and his named co-defendant as part of a drug trafficking conspiracy).

In addition, in this case, Altamirano-Quintero indicated in the plea agreement that he intended to cooperate with the Government and to provide "substantial assistance." This further suggests that Altamirano-Quintero had additional information to disclose and bolsters the record's already sufficient suggestion that he has failed to disclose all the information he had. For these reasons, the record before the district court was sufficient to support the district court's finding that Altamirano-Quintero had failed to prove by a preponderance of the evidence that he had made a complete and truthful disclosure to the Government of all the information he had concerning his offense.[13] That factual finding, therefore, was not clearly erroneous. See Virgen-Chavarin, 350 F.3d at 1130.

### III. CONCLUSION

For the foregoing reasons, this court AFFIRMS Altamirano-Quintero's statutory mandatory minimum ten-year sentence.

---

[13]The information Altamirano-Quintero failed to disclose, then, concerns his "offense or offenses that were part of the same course of conduct or of a common scheme or plan," 18 U.S.C. § 3553(f)(5), as the statute requires. Therefore, Altamirano-Quintero's argument on appeal that the district court was instead requiring him to disclose information concerning other people's crimes is unavailing.

06-1254, *United States v. Altamirano-Quintero*

**HOLMES, J.,** concurring.

I agree with the majority that the district court did not clearly err in finding Mr. Altamirano-Quintero ineligible for safety valve relief. More specifically, I agree with the majority's reasoning in Sections II(A) and II(C) and concur in the judgment. I am, however, troubled by Section II(B) of the majority opinion. There, the majority addresses whether Mr. Altamirano-Quintero could reasonably have understood, from the Plea Agreement's express terms, that the government conceded that he had "already complied with § 3553(f)(5)'s requirement that he truthfully disclose all the information he had regarding his offense." Maj. Op. at 11. I respectfully disagree with the majority's reasoning in Section II(B) and, therefore, cannot fully join its opinion.

In particular, I write separately for two reasons. First, to properly resolve this case, I find it unnecessary to reach the issue addressed in Section II(B). Second, the majority's tortuous efforts to overcome Mr. Altamirano-Quintero's reasonable arguments in favor of a government concession are not only unpersuasive, but also impose an unacceptable cost. Specifically, they run counter to, and undermine, our settled precedent concerning the interpretation of both the Sentencing Guidelines and plea agreements. Regarding the latter, the majority repeatedly employs a rigid, formalistic approach and declines to construe any ambiguities in the instant Plea Agreement against the drafter – the

government.[1]

The safety valve provision (18 U.S.C. § 3553(f)) expressly requires a district court to independently determine whether a defendant has satisfied the conditions for granting safety valve relief, after affording the government "the opportunity to make a recommendation." *E.g.*, *United States v. Gambino*, 106 F.3d 1105, 1110 (2d Cir. 1997) ("The plain language of the statute required the district court to make its own determination whether [the defendant] satisfied the safety valve provision, in light of the entire record including the government's recommendation."). Therefore, even if the government conceded that Mr. Altamirano-Quintero had satisfied the safety valve disclosure requirement, that concession would not compel the conclusion that Mr. Altamirano-Quintero had done so.

The district court was free to disregard the government's concession in favor of other evidence bearing on the subject. And, as the majority cogently demonstrates in Section II(C), the district court understood its independent role and did not clearly err in finding on the record that Mr. Altamirano-Quintero failed to satisfy the safety valve disclosure provision. Accordingly, as an initial

---

[1] *See, e.g.*, *United States v. Werner*, 317 F.3d 1168, 1170 (10th Cir. 2003) (construing plea agreement ambiguities against the government, as drafter); *United States v. Rockwell Int'l Corp.*, 124 F.3d 1194, 1199 (10th Cir. 1997) ("We will not allow the government to resort to a rigidly literal construction of the language of the plea agreement to frustrate a defendant's reasonable expectations." (internal quotation marks omitted) (quoting *United States v. Shorteeth*, 887 F.2d 253, 256 (10th Cir. 1989))).

2

matter, I find the majority's discussion in Section II(B) to be completely unnecessary to properly resolve this case. Even assuming *arguendo* the government's concession, I would reach the same conclusion regarding the unavailability of safety valve relief.

In addition, although I need not definitively opine on whether the government conceded through its relevant conduct stipulation that Mr. Altamirano-Quintero satisfied the safety valve's disclosure requirement,[2] a strong argument can be made that the government did so – more specifically, that Mr. Altamirano-Quintero reasonably could have understood the government to have made such a concession in the Plea Agreement. The majority's analysis to the contrary is unpersuasive and legally flawed. It fails to consistently adhere to the Guideline-defined meaning of "relevant conduct" and subjects the Plea Agreement to an impermissibly strained interpretation.

First, the majority observes that the government's relevant conduct stipulation "directly concern[ed] the 'relevant conduct on which the sentencing

---

[2]    The Plea Agreement provides in pertinent part:

> The parties believe that the sentencing range resulting from the plea agreement is appropriate because *all relevant conduct is disclosed*; that the stipulated facts by the parties take into account all pertinent sentencing factors with respect to this defendant; and that the charge to which the defendant has agreed to plead guilty adequately reflects the seriousness of the actual offense behavior.

R., Vol. I, Doc. No. 139, at 9-10 (Plea Agreement and Stipulation of Facts Relevant to Sentencing, filed June 20, 2005) (emphasis added).

3

<u>guidelines</u> calculate an advisory sentencing range" and did nothing more than "set[] the parameters for the criminal activity" about which Mr. Altamirano-Quintero was later required to provide information if he hoped to obtain safety valve relief. Maj. Op. at 14, 17. Accordingly, the majority reasons that Mr. Altamirano-Quintero could not have reasonably understood the government to have conceded that he had already provided the requisite information. *Id*. at 17. This analysis rests on the faulty assumption that the term "relevant conduct" means something different when calculating an advisory Guideline sentence than it does when determining whether a defendant is entitled to safety valve relief. The plain language of the Guidelines undercuts the majority's tacit assumption, and, therefore, weakens its rationale.

"Relevant conduct" is a term of art in criminal sentencing. As the majority recognizes, "relevant conduct" embraces the "Factors that Determine the Guideline Range." U.S.S.G. § 1B1.3(a)(1)(B). Accordingly, "relevant conduct" informs the district court's determinations of "(i) the base offense level . . ., (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, . . . ." *Id*. The majority further acknowledges that to satisfy the safety valve's disclosure provision, a defendant must provide the government with complete information concerning the "offense of conviction and *all relevant conduct*" as defined by U.S.S.G. § 1B1.3(a)(1)(B). *United States v. Stephenson*, 452 F.3d 1173, 1180 (10th Cir. 2006) (internal quotation marks

4

omitted and emphasis added) (quoting U.S.S.G. § 5C1.2, cmt. n.3 (2003)); *see also United States v. Acosta-Olivas*, 71 F.3d 375, 378 (10th Cir. 1995). Notwithstanding its recognition that "relevant conduct" is applicable in both formulating an advisory sentencing range *and* ascertaining the availability of safety valve relief, the majority nonetheless fails to accord the term "relevant conduct" the same meaning in both contexts.

"We interpret the Sentencing Guidelines according to accepted rules of statutory construction." *United States v. Reaves*, 253 F.3d 1201, 1203 (10th Cir. 2001). "In interpreting a guideline, we look at the language of the guideline itself, as well as at the 'interpretive and explanatory commentary to the guideline' provided by the Sentencing Commission." *United States v. Robertson*, 350 F.3d 1109, 1112 (10th Cir. 2003) (quoting *United States v. Frazier*, 53 F.3d 1105, 1112 (10th Cir. 1995)). The term "relevant conduct" is expressly defined by the Guidelines. Therefore, we typically apply the same meaning to the term each time it appears in the statute. *Sierra Club v. Seaboard Farms Inc.*, 387 F.3d 1167, 1175 (10th Cir. 2004) (when a technical term is used in a statute, "it is presumed . . . that the term [has] the same meaning in each of the sections or subsections"); *see also United States v. Perez*, 366 F.3d 1178, 1182 (11th Cir. 2004) ("Where the same language appears in two guidelines, it is generally presumed that the language bears the same meaning in both."). *Cf. Watson v. United States*, — S. Ct. —, 2007 WL 4292111, at ** 3-5 (Dec. 10, 2007)

5

(rejecting a uniform application of the term "use," which was undefined by the statute and not a term of art).

Because "relevant conduct" means the same throughout the Guidelines, the majority's attempt to limit the scope of the government's chosen language solely to the calculation of the advisory sentencing range is unpersuasive. "Relevant conduct" means the same for calculation of the advisory sentencing range as it does for application of the safety valve. Consequently, we could reasonably construe the government's express acknowledgment that Mr. Altamirano-Quintero disclosed all "relevant conduct" for one Guidelines purpose as an acknowledgment that he disclosed it for all Guidelines purposes.

In addition, I question the majority's reading of the Plea Agreement itself. The majority concludes for two principal reasons that Mr. Altamirano-Quintero could not reasonably interpret the Plea Agreement as stipulating that he had already provided the government with all of the information necessary to obtain safety valve relief: first, because the Plea Agreement refers only fleetingly to 18 U.S.C. § 3553(f);[3] and second, because it contemplates that the court would

---

[3] Identifying several passages in the Plea Agreement, the majority asserts, "they do not suggest that the Government was conceding that Altamirano-Quintero had already satisfied the safety-valve's requirement that he 'truthfully provide[] to the Government all information and evidence [he] has concerning the offense." Maj. Op. at 18 (quoting 18 U.S.C. § 3553(f)(5)). I find a less labored interpretation of the language at issue more persuasive. The government's relevant conduct language, when read in conjunction with the two provisions identified by the majority, could reasonably convey that although Mr. Altamirano-

(continued...)

6

consider additional information at sentencing. I am not convinced by either argument.

Relying on *United States v. Reyes Pena*, 216 F.3d 1204, 1212 (10th Cir. 2000), *United States v. Rockwell Int'l Corp*, 124 F.3d 1194, 1199 (10th Cir. 1997), and *Cunningham v. Diesslin*, 92 F.3d 1054, 1059 (10th Cir. 1996), the majority concludes that because the Plea Agreement language at issue does not expressly state that Mr. Altamirano-Quintero complied with § 3553(f), or even refer to the provision, the government did not concede that he disclosed all of the necessary information to meet the disclosure requirement. The cited cases, however, are inapposite.

In each of them, the defendant was attempting to introduce a new term into a plea agreement. Here, the Plea Agreement already includes the term in question – the relevant conduct stipulation. The inquiry relates to what that term means. That the "relevant conduct" language does not explicitly refer to § 3553(f) renders its scope, at most, ambiguous. Such ambiguities are "construe[d] . . . against the government as the drafter of the agreement," *United States v. Werner*, 317 F.3d 1168, 1170 (10th Cir. 2003).[4]

---

[3](...continued)
Quintero had revealed sufficient information to satisfy § 3553(f)(5), the government was noncommittal as to whether he had satisfied *all* of the elements necessary to obtain safety valve relief.

[4]     The majority refers to the relevant conduct stipulation as "standard
(continued...)

7

Furthermore, simply because the Plea Agreement allows the parties to present additional facts or evidence at sentencing[5] would not necessarily prevent Mr. Altamirano-Quintero from reasonably believing that the government had conceded that he had already disclosed all "relevant conduct" for safety valve purposes. Relevant conduct does not constitute the entire universe of information

---

[4](...continued)

language prescribed by the local rule." Maj. Op. at 19. Although the majority acknowledges, as it must, that such generic language has the power to "bind[] the parties to that agreement," it states that it "cannot conclude that the Government, by using this standard language, meant to concede in every case that the defendant has satisfied the safety valve's § 3553(f)(5)'s disclosure requirement." *Id.* However, whether the government actually meant to concede that general proposition is not the point. Rather, at issue is what Mr. Altamirano-Quintero reasonably could have concluded the government was giving him through the relevant conduct stipulation. We have acknowledged that "the rules of contract law inform the interpretation and enforcement of promises in a plea agreement." *United States v. Novosel*, 481 F.3d 1288, 1291 (10th Cir. 2007) (internal quotation marks and brackets omitted) (quoting *Rockwell Int'l Corp.*, 124 F.3d at 1199). Thus, we must rely on the express language of the agreement to discern the parties' intent. *United States v. Brye*, 146 F.3d 1207, 1210 (10th Cir. 1998).

[5]       The Plea Agreement provides:

> With the exception of the stipulated facts set forth above, this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or evidence which a party believes is relevant to sentencing. Further, the Court is not bound by the factual stipulations of the parties. In determining the factual basis for the sentence, the Court may consider not only the stipulations of the parties, but also the results of any pre-sentencing investigation that may be conducted by the U.S. Probation Department, together with any other relevant information that may be brought to the Court's attention.

R., Vol. I, Doc. No. 139 at 6.

that courts properly may consider in imposing sentence. The Plea Agreement merely recognizes that truth.

Absent some restriction in the Guidelines or other law, the sentencing court is free to "consider, without limitation, any information concerning the background, character and conduct of the defendant." U.S.S.G. § 1B1.4. Consequently, the Plea Agreement could reasonably be read to allow the parties to provide additional information for the court's consideration, without its language eroding the foundation for Mr. Altamirano-Quintero's arguably reasonable belief that the government had conceded that he already had provided all of the information necessary to satisfy the safety valve's disclosure provision (i.e., information concerning his relevant conduct).[6]

In sum, I disagree with the majority's decision to reach the issue discussed in Section II(B), relating to the government's alleged plea agreement concession. It is a step unnecessary to the proper resolution of this case. Moreover, the majority's decision to take this step will be costly; its strained analysis

---

[6] Indeed, as the majority correctly recognizes, the informational requirements of the safety valve provision and the substantial assistance provision are not coterminous. Accordingly, if Mr. Altermarino-Qunitero had in fact followed the path anticipated by the Plea Agreement and sought substantial assistance relief, he could quite conceivably have provided the government (and, derivatively, the court) with additional information concerning the illegal activities of others that would not have fallen within the scope of the relevant conduct of his offense (i.e., outside of the universe of information that he was required to disclose to obtain safety valve relief).

9

contravenes our circuit's settled principles for interpreting both the Guidelines and plea agreements. Accordingly, although concurring in the result, I cannot fully join the majority's opinion.