**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 18, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

WESLEY LAMOND GAGE,

      Defendant-Appellant.

No. 08-7075
(D.C. No. CR-02-00052-JHP-1)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **EBEL**, and **GORSUCH**, Circuit Judges.

Wesley Lamond Gage ("Gage") appeals the district court's order denying

his Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2). The

district court held that Gage's original sentence was imposed pursuant to a plea

agreement under Federal Rule of Criminal Procedure 11(e)(1)(C),[1] which provides

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]Former Rule 11(e)(1)(C) has been slightly amended and renumbered as Rule 11(c)(1)(C). Because the rule in effect at the time of Gage's plea agreement and sentencing was 11(e)(1)(C), this Order and Judgment refers to the rule by that

(continued...)

that such an agreement is "binding on the court once it is accepted by the court." Without specifying that it was doing so, the district court then followed this Court's decision in United States v. Trujeque, 100 F.3d 869, 869-71 (10th Cir. 1996), which held that when a defendant "enter[s] a plea agreement specifying a term of imprisonment pursuant to Fed. R. Crim. P. 11(e)(1)(C), he may not seek a reduction in his sentence via 18 U.S.C. § 3582(c)(2)." Alternatively, the district court declined to exercise any discretion it had to modify Gage's sentence because that sentence "still falls below the amended guideline sentencing range determined by application of" Amendment 706, and because the original sentence "is reasonable and sufficient to meet the goals of sentencing set forth in 18 U.S.C. § 3553(a)."

Exercising jurisdiction under 28 U.S.C. § 1291, we agree with the district court that Gage's original sentence was imposed pursuant to a Rule 11(e)(1)(C) plea agreement. Therefore, because that sentence was not "based on a sentencing range that has been subsequently lowered by the Sentencing Commission," 18 U.S.C. § 3582(c)(2), the district court should have dismissed Gage's motion without considering it on the merits. See Trujeque, 100 F.3d at 871.

I.    Procedural background

---

[1](...continued)
number.

On October 25, 2002, pursuant to a written plea agreement, Gage pled guilty to possession of in excess of 500 grams of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); and maintaining a place for the purpose of manufacturing, distributing, and using cocaine, in violation of 21 U.S.C. § 856(a)(1)-(2). Gage entered the guilty plea before Magistrate Judge Kimberly West, who conducted the plea colloquy. But the written plea agreement was formally adopted by District Judge James Payne, who on February 14, 2003, sentenced Gage, in accordance with that agreement, to 120 months' imprisonment on each charge, with those prison terms to run concurrently. At the time Gage was sentenced, his offense level of 33 and criminal history category of II resulted in a Guidelines sentencing range of 151-188 months' imprisonment.

On November 1, 2007, the Sentencing Commission adopted Amendment 706, which generally provided for a 2-level decrease in the base offense level for offenses involving crack cocaine. See United States v. Rhodes, 549 F.3d 833, 835 (10th Cir. 2008). Amendment 706 was made retroactive as of March 3, 2008, see U.S.S.G. § 1B1.10(c), and Gage filed his motion for modification of his sentence on June 16, 2008. Under Amendment 706, Gage's amended offense level was 31, which, combined with his criminal history category of II, resulted in an "Amended Guideline Range" of 121-151 months' imprisonment. Judge Payne, who had formally accepted Gage's plea agreement and sentenced Gage in 2003, denied the § 3582(c)(2) motion on July 21, 2008, and this appeal timely followed.

II.     Discussion

A.     *Standard of review*

In order to determine whether Gage's guilty plea was entered pursuant to Fed. R. Crim. P. 11(e)(1)(C), we must review the terms of his plea agreement. That review is <u>de novo</u>. <u>United States v. Altamirano-Quintero</u>, 511 F.3d 1087, 1093-94 (10th Cir. 2007). "In interpreting a plea agreement, we apply general principles of contract law, looking to the agreement's express language and construing any ambiguities against the government as the drafter of the agreement." <u>Id.</u> at 1094 (quotation, omission, alteration omitted). We construe the agreement according to "what the defendant reasonably understood when he entered his plea." <u>United States v. Veri</u>, 108 F.3d 1311, 1312 (10th Cir. 1997). Therefore, as Gage acknowledges, our analysis of a plea agreement "involves examination of 'the language throughout the plea agreement and the parties' statements at the change-of-plea hearing.'" (Aplt. Br. at 8 (quoting <u>United States v. Siedlik</u>, 231 F.3d 744, 748 n.1 (10th cir. 2000).)

B.     *Fed. R. Crim. P. 11(e)(1)(C)*

When Gage entered his guilty plea on October 25, 2002, Fed. R. Crim. P. 11(e) read, in pertinent part, as follows:

(1)     **In general.** The attorney for the government and the attorney for the defendant . . . may agree that, upon the defendant's entering a plea of guilty or nolo contendere to a charged offense, . . . the attorney for the government will:

- 4 -

(A)     move to dismiss other charges; or

(B)     recommend, or agree not to oppose[,] the defendant's request for a particular sentence or sentencing range . . . . Any such recommendation or request is not binding on the court; or

(C)     agree that a specific sentence or sentencing range is the appropriate disposition of the case . . . . Such a plea agreement is binding on the court <u>once it is accepted by the court</u>.

        The court shall not participate in any discussions between the parties concerning any such plea agreement.

(2)     **Notice of Such Agreement.** If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court . . . . <u>If the agreement is of the type specified in subdivision . . . (C), the court may accept or reject the agreement</u>, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.

        . . . .

(4)     **Rejection of a Plea Agreement.** If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court . . . that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in a guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

Fed. R. Crim. P. 11(e) (1999) (emphasis added).

C.     *Gage's plea agreement and plea colloquy*

The plea agreement stipulated that "[p]ursuant to Rule 11(e)(1)(C)," the

parties agreed that "(a) Defendant shall plead guilty to Counts One and Three [of]

- 5 -

the Indictment as stated above[; and] (b) The sentence shall be a term of imprisonment of one hundred twenty (120) months on each count to be served concurrently." (R. vol. 1, plea agmt. at 2-3.) The agreement went on to acknowledge Gage's understanding "that the Court is not a party to and is not bound by this agreement nor any recommendations made by the parties," and that because the Court was not bound by the agreement, it was "free to impose upon the defendant any sentence up to and including the maximum." (Id. at 7.) It also stipulated that Gage agreed not to withdraw his guilty plea "if the Court contemplates departure or departs from" the Guidelines "sentencing range calculation," and that Gage would not be permitted to withdraw his plea solely because "the Court imposes a sentence with which [he] is dissatisfied." (Id.) Finally, the agreement provided that Gage was "aware that any estimate of the probable sentencing range that [he] may receive from his attorney, . . the probation office, or any agents of such parties, is not a promise, and is not binding on" the parties or the Court, and that Gage waived the right to appeal or contest his sentence, except as to an upward departure from the Guidelines range. (Id. at 12-13.)

Gage argues that the plea agreement should be construed under Rule 11(e)(1)(B), rather than under Rule 11(e)(1)(C), because the terms recited above "establish[] that the court was not . . . bound" by the agreement. (Aplt. Br. at 9.) Yet Gage's own language reveals the fatal flaw in this argument: under Rule

11(e)(1)(C), "the court is bound <u>if the agreement is adopted</u>" (<u>id.</u> (emphasis added)); the court is <u>not</u> bound by the agreement itself.  Here, after stipulating, under Rule (11)(e)(1)(C), what Gage's "sentence shall be"–not what the Government will recommend as to a sentence–the agreement acknowledges, consistent with that Rule,[2] that the Court is not a party to the agreement and so is not bound to adopt it.  Thus, the agreement correctly dictated that "any estimate" of Gage's "probable sentencing range," as based on that agreement, was "not a promise, and [was] not binding on . . . the Court."

Further, if the Court had elected <u>not</u> to accept the agreement, and if Gage had been found guilty at trial or had maintained his guilty plea, the court was free to sentence Gage within his Guidelines range, or to depart upward or downward from that range.[3]  <u>See</u> <u>Veri</u>, 108 F.3d at 1314 ("When read from beginning to end, . . . it is apparent the plea agreement sets out the consequences [the defendant] would have faced if he had gone to trial and been convicted, and then states the deal he struck under Rule 11(e)(1)(C) in exchange for pleading guilty . . . .").

---

[2]"The court shall not participate in any discussions between the parties concerning any such plea agreement."  Fed. R. Crim. P. 11(e)(1)(C).

[3]Although we conclude that Gage's plea agreement was consistent with Rule 11(e)(1)(C), we strongly caution the Government that plea agreements are far too important to be created with the apparent boilerplate, cut-and-paste language that was used in this case.  An agreement under current Rule 11(c)(1)(C) should make explicit which of its provisions refer to the potential or certain outcome for the defendant if the Court accepts the agreement, and which refer to the potential or certain outcome if the Court rejects the agreement.

Gage correctly points out that the plea agreement does not contain a provision making explicit what is perhaps the most crucial element of a Rule 11(e)(1)(C) plea: that if the agreement is not accepted by the Court, the defendant must be given an opportunity to withdraw his guilty plea. (Aplt. Br. 10-11); see Fed. R. Crim. P. 11(e)(4) (1999). However, the extensive colloquy initiated by Magistrate Judge West at Gage's change-of-plea hearing adequately remedies that lapse. See Veri, 108 F.3d at 1312 (explaining that we construe the plea agreement according to "what the defendant reasonably understood when he entered his plea"); Siedlik, 231 F.3d at 748 n.1 (examining both the language of the plea agreement and the parties' statements at the change-of-plea hearing in order to interpret plea agreement).

At the change-of-plea hearing, the Government explained to Judge West that because the plea agreement had been made under Rule 11(e)(1)(C), "[i]f the Court rejects the agreement, then under Rule 11(e) of the Rules of Criminal Procedure, [Gage] will be given the opportunity to withdraw his plea and stand on the charges with which he's originally charged." (R. vol. 2, plea hearing at 8.) Gage's attorney then added, "[P]articularly important to Mr. Gage is the fact that this is a Rule 11(e)(1)(C) plea to 120 months or ten years[,] and that's what he's agreed to[,] and if the Court rejects that plea agreement, then he would have the right under that rule to withdraw his plea and stand on his original not guilty plea and go to trial at that point if the Court did reject the plea agreement." (Id. at 9.)

Judge West later said to Gage, "you've heard the announcement by both [the Government] and your counsel as to the parameters of this plea agreement. Do you understand–is that your understanding of what the plea agreement involves?" (Id. at 16.) Gage replied, "Yes, your honor." (Id.)

Gage argues that these "characterizations of the nature of the Plea Agreement must be discounted, because they vary from the terms of the Agreement." (Aplt. Br. at 12.) As discussed above, however, these comments by the parties do not, in fact, "vary from" or contradict the terms of the plea agreement. Instead, they make explicit what the agreement left implicit: that if the Rule 11(e)(1)(C) agreement were not accepted by the Court, Gage had a right to withdraw his guilty plea and stand on his original plea of not guilty.

Gage also argues that when Judge West, pursuant to Rule 11(e)(1)(C), asked Gage whether he understood "that the Court has not participated in any way in any of the discussions regarding the plea agreement and is not and would not be bound by the terms of the plea agreement," she introduced "further ambiguity" as to whether the agreement, if accepted, would be binding on the court. (Id. at 13.) Yet immediately following that question and Gage's affirmative response, Judge West asked, "Do you understand that the Court may accept or reject any such agreement and if the Court rejects it, you will be given an opportunity to withdraw your plea of guilty?" (R. vol. 2, plea hearing at 17.) Again, Gage answered, "Yes, your honor." (Id.) Pursuant to Rule 11(e)(2), Judge West then

informed Gage that the court would "reserve its decision about acceptance of the plea agreement until the sentencing report is completed." (Id.)

We conclude that if Gage did not understand from the terms of the plea agreement itself that a Rule 11(e)(1)(C) agreement could be accepted or rejected by the court, and that if it were rejected, Gage would have the right to withdraw his guilty plea, he clearly gained that understanding from the plea colloquy with Judge West. Consistent with both the agreement and the colloquy, having "formally adopt[ed] the plea agreement as written" (R. vol. 2, sentencing hearing at 3-4), Judge Payne thus "imposed [Gage's] sentence in accordance with the Federal Rules of Criminal Procedure, Rule 11(e)(1)(C)" (id. at 7), rather than in accordance with a Guidelines sentencing range. As a result, Gage "may not seek a reduction in his sentence via 18 U.S.C. § 3582(c)(2)," and the district court "should have dismissed [the] motion without considering its merits." Trujeque, 100 F.3d at 869, 871.

III. Conclusion

For the foregoing reasons, we remand to the district court with instructions to dismiss Gage's motion.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge


- 10 -